**MOUNTAIN FUEL SUPPLY COMPANY, a Utah Corporation, Plaintiff-Appellee and Cross-Appellant,**

v.

**Reland JOHNSON, Defendant,**

and

**Johnson Oil Company, Inc., Defendant-Appellant and Cross-Appellee.**

**Nos. 77–1410 and 77–1432.**

United States Court of Appeals, Tenth Circuit.

Submitted Sept. 29, 1978.

Decided Nov. 22, 1978.

Rehearing Denied Dec. 20, 1978.

Robert S. Campbell, Jr., Salt Lake City, Utah (Duane R. Smith, Salt Lake City, Utah, on the brief), of Watkiss & Campbell, Salt Lake City, Utah, for plaintiff-appellee and cross-appellant Mountain Fuel.

Dan S. Bushnell, Salt Lake City, Utah (Joseph C. Rust, Salt Lake City, Utah, on the brief), of Kirton, McConkie, Boyer & Boyle, Salt Lake City, Utah, for defendant-appellant and cross-appellee Johnson Oil Co., Inc.

Before SETH, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

This complex litigation originated on June 28, 1974, when plaintiff, cross-appellant here, Mountain Fuel Supply Company, a Utah corporation (Mountain Fuel) filed its complaint against defendants, appellants here, Reland Johnson and Johnson Oil Company, Inc., a Utah corporation (Johnson Oil) in the state District Court of Davis County, Utah. All parties are residents of the State of Utah. The cause was removed to the United States District Court for the District of Utah, Northern Division, after Johnson filed an Answer and Counterclaim and petitioned for removal on January 6, 1975. Following extensive pleading and discovery the cause was tried to a jury which, on June 23, 1976, returned a general verdict in favor of Johnson on its counterclaim. It awarded Johnson $65,000.00 in compensatory damages and $110,000.00 in punitive damages. Upon motion by Mountain Fuel, the court struck the award of punitive damages. Judgment was entered awarding Johnson damages in amount of $65,000.00. Both parties appeal.

After this appeal was docketed and calendared, this Court, *sua sponte*, requested that the respective parties brief the question of this Court's subject matter jurisdiction. We assumed that in view of the lack of diversity of citizenship between the parties, this action was one arising under federal law within the meaning of 28 U.S.C.A. § 1331 justifying its removal from state court to federal district court pursuant to 28 U.S.C.A. § 1441. Our concern was whether the appeal falls within the jurisdiction of this Court or the exclusive jurisdiction of the Temporary Emergency Court of Appeals (TECA). We shall focus on the appellate jurisdictional issue which we believe to be dispositive.

The Mountain Fuel complaint filed in the state court and removed to the federal district court alleges, in summary, that: on July 15, 1970, Mountain Fuel entered into a written agreement with Johnson whereby Mountain Fuel agreed to sell and Johnson agreed to buy all condensate which it owned, controlled or produced from the Dry Piney Field in Sublette County, Wyoming,

commencing August 1, 1970, to July 1, 1971, and thereafter until terminated upon thirty-day notice, at the tank truck loading racks of said unit at an amount equal to "the per barrel price posted on date of delivery by Pan American Petroleum Corporation (AMOCO) for Southwestern Wyoming crude oil of forty (40) degrees to forty-four (44) degrees a. p. i. gravity, plus five cents (5¢) per barrel, which posted price on the date hereof is Three Dollars and Twenty-Eight Cents ($3.28) per barrel of forty-two (42) gallons" [R., Vol. V, p. 9]; that thereafter nugget crude oil was substituted for condensate by agreement of the parties; on *"August 17, 1973, the Cost of Living Council of the United States issued its 'Phase IV' oil regulations, a copy of which is attached and incorporated herein by reference. That on or about December 19, 1973, the Cost of Living Council issued further regulations governing the price ceiling on oil, a copy of which, as published in the Federal Register, is hereto attached and incorporated herein by reference."* (Emphasis supplied.) [R., Vol. V, p. 5]; on November 16, 1973, Mountain Fuel notified Johnson by letter that in view of the Phase IV price controls it would, effective December 1, 1973, charge the ceiling price of $4.65 per barrel and that, in addition, under applicable federal regulations, it would charge the applicable AMOCO field posted price of $5.83 plus 3¢ or $5.86 per barrel of that referred to in the regulations as "new" or "released old" oil; thereafter Mountain Fuel delivered to Johnson oil billed at $128,652.57 in accordance with the pricing arrangements established by the federal price ceiling regulations; Johnson has refused to pay the principal sum of $40,585.00; Mountain Fuel prayed for judgment in principal sum of $40,585.50, interest at the rate of 7 percent per annum and costs.

Johnson filed an Answer and Counterclaim in the state court proceeding. The Answer acknowledged receipt of the Mountain Fuel letter of November 16, 1973, setting forth proposed changes under the Federal Energy Office Regulations to which it agreed, but specifically denied that it had agreed to pay any increased price for oil or that Mountain Fuel had in fact any "new oil" or "released old oil" at its disposal. Certain affirmative defenses were pleaded. In its Counterclaim, Johnson alleged that Mountain Fuel: breached the agreement of July 15, 1970, in violation of the Emergency Petroleum Allocation Act of 1973 and the regulations promulgated thereunder; refused to supply crude oil as provided under the agreement and sold the oil to Allied Chemical Company; and interfered with the business relationship between Johnson and Allied Chemical Company, resulting in a violation of the Emergency Petroleum Act of 1973 and the regulations promulgated thereunder. Johnson prayed for $70,000.00 compensatory damages, $5,000.00 as civil penalties under the regulations promulgated pursuant to the Emergency Petroleum Allocation Act of 1973, costs and other relief. Johnson thereafter filed an Amended Answer and Counterclaim in the state court. In addition to violations charged in derogation of the Emergency Petroleum Allocation Act of 1973 and the regulations promulgated pursuant thereto, Johnson alleged overcharges in violation of the Economic Stabilization Act of 1970, and other causes. The prayer of the Amended Answer and Counterclaim was for dismissal of Mountain Fuel's complaint, award to Johnson of $200,000.00 as damages on its First Cause of Action, together with $600,000.00 as civil penalty provided by the Economic Stabilization Act of 1970, $105,000.00 as damages for the Second Cause of Action, together with $762,500.00 as civil penalty provided by the Economic Stabilization Act of 1970, the sum of $80,000.00 as damages for the Third Cause of Action, attorneys fees, and costs.

The substantive issues posed by the allegations contained in the pleadings filed by the parties in the state court as of January 5, 1975, when Johnson filed its Petition for Removal to the federal district court included: the applicability of the amounts (prices) Mountain Fuel was entitled to charge John-

son and the sums Johnson owed based on the validity of regulations promulgated pursuant to the Emergency Petroleum Allocation Act of 1973 which purport to alter or affect the initial agreement, the interpretation of the contract-agreement in light of the "applicable" price posted by AMOCO plus 3¢ per barrel, known as the "posted price"; a subsequent offer submitted to Mountain Fuel to purchase the oil at a higher price known as "The Cowboy Contract Price of April 1, 1973"; the "ceiling price" regulation established by the Cost of Living Council under the Economic Stabilization Act of 1970 (ESA), § 210(a), 12 U.S.C.A. § 1904 Note and the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C.A. § 751, *et seq.*, relating to interpretation and price of "new oil" and "released old oil" at Mountain Fuel's disposal for sale; whether Mountain Fuel's refusal to supply crude oil to Johnson from and after April 1, 1974, was a breach of contract in violation of the EPAA of 1973 and the regulations promulgated thereunder; and whether Mountain Fuel overcharged Johnson for oil alleged to be "new oil" in violation of § 210 of the ESA of 1970.

15 U.S.C.A. § 754(a)(1) of the EPAA of 1973 incorporates by reference §§ 205–211 of the ESA of 1970 and all regulations promulgated thereunder.

12 U.S.C.A. § 1904 Note (Supp.1977) of the ESA of 1970 provides in § 211(a):

The district courts of the United States shall have exclusive jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy; except that nothing in this subsection or in subsection (h) of this section affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by any agency under this title) raised in any proceeding before such court. *If in any such proceeding an issue by way of defense is raised based on the constitutionality of this title or the validity of agency action under this title, the case shall be subject to removal by either party to a district court of the United States in accordance with the applicable provisions of Chapter 89 of Title 28, United States Code* [Chapter 89 of Title 28]. (Emphasis supplied.)

Following removal and prior to commencement of the trial before the jury, Johnson stipulated that it owed Mountain Fuel the sum of $19,629.50. This disposed of the claim on Mountain Fuel's complaint. The case was then tried and it went to the jury on Johnson's counterclaim. The trial court, upon motion set aside the jury verdict of $110,000.00 for punitive damages in favor of Johnson and against Mountain Fuel. Judgment was then entered on behalf of Johnson representing the verdict award of $65,000.00 compensatory damages, together with interest and costs. In addition, the judgment (a) ordered that Johnson be entitled to receive (from Mountain Fuel) "125 barrels of base production control level crude oil pursuant to and during the existence of the December 1, 1973 EPA (Emergency Petroleum Allocation) Regulation, 10 C.F.R. § 211.64(a), so long as the same is unaltered and in effect and so long as there is no overall shortage of production, and other regulatory and contractual requirements are satisfied by Johnson Oil Company, Inc." [R., Vol. VI, p. 328.] and (b) that Johnson's claims for recovery of treble damages, civil penalties, attorneys fees and costs "under Sections 208(b) and 210(b) of the 1970 Economic Stabilization Act" be denied. [R., Vol. VI, p. 329.]

After the appeal and cross-appeal were docketed and calendared in this Court, we directed, on our own motion, that the parties address a section of their respective briefs to the question whether their appeals are properly before this court rather than before the TECA. This issue is, in our view, dispositive.

Johnson adopted and agreed with the jurisdictional issue presented in Mountain

Fuel's brief. [Brief of Johnson, p. 4.] Thus, both parties are in agreement with the propositions presented under the caption "Jurisdiction" of Mountain Fuel's brief. [Brief of Mountain Fuel, pp. 19–25.] The parties contend that this Court has jurisdiction to hear and adjudicate each of the claims of the respective parties in that this is not a case which "arises under" the Allocation Act of 1973, *supra.* While giving hesitant credence to the proposition that 12 U.S.C. § 1904 Note (§ 211 of the ESA), as incorporated in the EPAA of 1973 does vest exclusive jurisdiction in the TECA as to those matters which "arise under" the subject Acts and regulations, the parties urge that such does not apply in the case at bar because the complaint of Mountain Fuel filed in the state court "did not, in any sense, involve itself with or raise substantive issues concerning either the 1970 or 1973 Acts or any regulations promulgated thereunder" and that ". . . the Complaint alleges a cause of action sounding solely in breach of contract." [Brief of Mountain Fuel, p. 23.] If this court were to accept the contentions so advanced and the authorities cited and relied upon in the briefs, we would be compelled to hold and conclude that not only is this Court without jurisdiction on appeal but, more astonishingly, that the federal district court was without jurisdiction to hear the matter following removal! The reasons, we believe, are obvious. First, there exists no diversity of citizenship between the parties meeting the jurisdictional requirements of 28 U.S. C.A. § 1332. *Accordingly, if the action—as reflected solely by the Mountain Fuel complaint filed in the state court—did not, as contended by the parties, "in any sense, involve itself with or raise substantive issues concerning either the 1970 or 1973 Acts or any regulations promulgated thereunder" [R., Vol. V, pp. 4–18.], but simply alleged a cause of action sounding solely in breach of contract (as contended) which did not implicate any applicable federal laws, rules, regulations or orders, then the removal from the Utah state court was improvi-*

*dent and without jurisdictional justification as a matter of law!* This position is the more difficult to reason upon when we consider that the *crux* of the parties' argument is that the test for determining whether an action "arises under" the Constitution, treaties or laws of the United States giving rise to jurisdiction under the "federal question" authority of 28 U.S.C.A. § 1331(a) (no diversity required) must be determined *solely* by the presence of well-pleaded allegations appearing from the face of the complaint and that the Mountain Fuel complaint *does not* invoke any federal laws! If this contention of the parties were to control, we would be compelled to hold that the federal district court lacked subject matter jurisdiction. This would be so simply because, lacking diversity of citizenship between the parties *and* the existence of a "federal question," only the breach of contract action would remain, to be governed exclusively by the law of Utah. Under such circumstances no cause would exist for removal from the state court to the federal district court.

■ The parties contend that in determining the existence of the "federal question" jurisdiction under 28 U.S.C.A. § 1331(a) justifying removability from a state court to a federal court one must look solely at the plaintiff's complaint rather than to any subsequent pleading or the petition for removal. We agree. This is, of course, a fundamental rule. Barron & Holtzoff, Federal Practice and Procedure, (Wright Ed.) Vol. I, § 102, p. 471; *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Great Northern Railway Company v. Alexander,* 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918); *Arkansas v. Kansas and Texas Coal Co.,* 183 U.S. 185, 22 S.Ct. 47, 46 L.Ed. 144 (1901); *Mescalero Apache Tribe v. Martinez,* 519 F.2d 479 (10th Cir. 1975); *Seneca Nursing Home v. Kansas State Board of Social Welfare,* 490 F.2d 1324 (10th Cir. 1974), *cert. denied,* 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 69 (1974); *Slattery v. Arapahoe Tribal Council,* 453 F.2d 278 (10th Cir.

1971); *Groundhog v. Keeler*, 442 F.2d 674 (10th Cir. 1971); *Chandler v. O'Bryan*, 445 F.2d 1045 (10th Cir. 1971), *cert. denied*, 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972); *Metropolitan Paving Company v. International Union of Operating Engineers*, 439 F.2d 300 (10th Cir. 1971), *cert. denied*, 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58 (1971); *Simpson v. State of Utah*, 365 F.2d 185 (10th Cir. 1966). The parties argue that the Mountain Fuel complaint alleges a cause of action sounding solely in breach of contract and that "While it is true that Paragraphs 6 and 7 of the Complaint (R. 5) allude to 'Phase IV' oil regulations promulgated by the CLC, such does not change the essence or character of the Complaint. The said regulations are neither attacked nor sought to be enforced. Nowhere on the face of the Complaint does Mountain Fuel ask for an interpretation or application of the regulations." [Brief of Mountain Fuel, p. 23.] Thus, if we were to adopt, accept and concede this argument of the parties we would surely be compelled to hold that the federal district court lacked subject matter jurisdiction and that the judgment must be vacated! This is so because (again accepting for the purpose of this discussion the contentions advanced by the parties) (a) there is no diversity of citizenship between the parties justifying removal of the cause from state court to federal district court as required pursuant to 28 U.S.C.A. § 1331 and (b) removal is not justified on the basis that a substantial federal question is asserted on the face of the complaint.

■ We hold, however, that the Mountain Fuel complaint filed originally in the Utah state court does, on its face, assert a substantial federal question under the laws and regulations of the United States independent of allegations or affirmative relief asserted in Johnsons' Answer and Counterclaim or Petition for Removal. The general rule is that if a case arising (in fact) under the laws of the United States is filed in state court but is non-removable to a federal district court for want of assertion of the federal question on the face of the complaint, jurisdiction can attach only by the voluntary amendment of the plaintiff's pleadings. *Great Northern Railway Company v. Alexander, supra.* Thus, if we were to honor the contention of the parties relative to "want" of a federal question on the face of Mountain Fuel's complaint, it was the duty of the federal district court to remand the case to the state court when it became manifest upon the face of the complaint or the petition for removal that the case has been improperly removed to the federal court. *Cameron v. Hodges*, 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132 (1888).

■ A case "arises" under the laws of the United States if it clearly and substantially involves a dispute or controversy respecting the validity, construction or effect of such laws which is determinative of the resulting judgment. *Shulthis v. McDougal*, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912). Thus, if the action is not expressly authorized by federal law, does not require the construction of a federal statute and/or regulation and is not required by some distinctive policy of a federal statute to be determined by application of federal legal principles, it does not arise under the laws of the United States for federal question jurisdiction. *Lindy v. Lynn*, 501 F.2d 1367 (3rd Cir. 1974.)

■ We need not again detail the Mountain Fuel complaint in relation to its invocation of a "federal question" on its face. We hold that it does invoke a substantial federal question, contrary to the contention of the parties. The very predicate for the damage claim of Mountain Fuel in the breach of contract sense is that Mountain Fuel is entitled to a sum in excess of the originally agreed contract price for crude oil based upon the "Phase IV" oil regulations issued by the Cost of Living Council on August 17, 1973, (promulgated pursuant to the ESA of 1970, *supra*) which were attached to said complaint "and incorporat-

ed" by reference therein, coupled with Mountain Fuel's allegations that the "ceiling price" or "posted price" under the applicable federal regulations which it charged Johnson for "old," "released," or "new" oil justified the $5.86 per barrel charge. The federal regulations above referred to are those promulgated under the EPAA of 1973, *supra*. That Act incorporated by reference the ESA of 1970. Thus, on its face, the Mountain Fuel complaint did in fact invoke a substantial federal question involving the construction, applicability and effect of the aforesaid federal acts and governing regulations relating to the monetary awards claimed.

■■■ The general rule is that a motion to dismiss an action for lack of subject matter jurisdiction will be denied even though the allegation of jurisdiction is insufficient or entirely lacking if there are facts pleaded in the complaint from which jurisdiction may be inferred in essence and effect. Wright and Miller, Federal Practice and Procedure: Civil § 1350, p. 550. A complaint is to be construed broadly and liberally as to do substantial justice. *Mitchell v. Parham*, 357 F.2d 723 (10th Cir. 1966); 12 A.L.R. 2d Anno., pp. 1–74, Federal Courts' Jurisdiction. As heretofore noted, the Mountain Fuel complaint set forth a copy of the "Condensate Agreement" of July 15, 1970, by reference "attached hereto, referred to hereby and incorporated herein." [R., Vol. V, p. 4.] In addition, the complaint set forth a copy of the "Phase IV oil regulations" promulgated by the Cost of Living Council under the Economic Stabilization Program and the Cost of Living Council's regulations governing the "price ceiling on oil" as published in the Federal Register which were "hereto attached and incorporated herein by reference." [R., Vol. V, p. 5.] Finally, attached to the complaint was a Mountain Fuel letter of November 16, 1973, to Johnson Oil notifying that future pricing arrangements were subject to the "federal price ceiling regulations." [R., Vol. V, p. 5.] Thus, it is clear that while the relationship between Mountain Fuel and Johnson Oil was predicated upon the Condensate Agreement of July 15, 1970, that Mountain Fuel's claims, as discerned from the face of its complaint, is that because of the intervening federal laws and regulations there is a substantial federal question involved in the controversy. Mountain Fuel alleges that because of the federal laws and regulation it was entitled to more monies for the sale of oil to Johnson Oil than the prices set forth in the written agreement.

We first observe that any contention that a substantial federal question was not set forth "on the face" of the Mountain Fuel complaint is without merit. Fed.Rules Civ. Proc. rule 10(c), 28 U.S.C.A. provides that "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Wright & Miller, Federal Practice and Procedure: Civil § 1327. In this case, the Mountain Fuel complaint, originating by specific written contract, finds its remedial prayer anchored to an interpretation and applicability of federal laws and regulations governing the price or prices it may legally charge Johnson Oil under and by reason of the aforesaid federal laws and regulations. Thus, the federal claim or claims asserted by Mountain Fuel on the face of its complaint clearly present a substantial federal question or questions arising under the laws of the United States.

■■ Even though a complaint involves a state claim still, as a matter of judicial economy the federal court has power to entertain the pendent claim if the federal claim arises "under the Constitution, the Laws of the United States and the treaties made" and the relationship between the state claim and the federal claim permits the conclusion that the entire action before the court compromises but one case. The federal claim must, of course, have sufficient substance to confer subject matter jurisdiction on the federal court. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966);

Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction, § 3567. The criteria is met here.

We hold that it is not necessary to rely exclusively on the Mountain Fuel complaint in order to justify removal on the "federal question" basis. The amended Johnson Answer and Counterclaim filed in the state court, coupled with its Petition for Removal, "fits" the four corners of 12 U.S.C.A. § 1904 Note (Supp.1977) of the ESA of 1970, § 211(a), *supra*, in that removal jurisdiction is specially recognized if any issue raised by way of defense challenges the validity of agency action under the two subject federal acts. Johnson's Amended Answer and Counterclaim challenged the validity of certain regulations promulgated pursuant to the EPAA of 1973 which Johnson alleged to directly affect its cause, i. e., those relating to "old oil" and "new oil." These grounds were specifically relied on in Johnson's Petition for Removal. [R., Vol. V, pp. 1–3.]

The parties, per briefs, rely upon the identical jurisdictional arguments heretofore discussed in support of their contention that this Court, rather than the TECA "has a firm hand on subject matter jurisdiction on each and all of the issues, including 'posted price' and 'allocation' of Dry Piney crude oil, on appeal herein, whether those issues are raised under the cross-appeal of Mountain Fuel or the main appeal of Johnson." [Brief of Mountain Fuel, p. 25.] We disagree.

The TECA was created by Congress in the ESA of 1970, 12 U.S.C.A. § 1904. Note § 211(b)(2) of that Act provides, *inter alia:*

(2) Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States *in cases and controversies arising under this title or under regulations or orders issued thereunder.* . . . (Emphasis supplied.)

15 U.S.C.A. § 754(a)(1) of the EPAA of 1973 incorporates by reference §§ 205–211

of the ESA of 1970, as amended, in effect November 27, 1973, which ". . . shall apply to the regulation promulgated under section 753(a) of this title, to any order under this chapter, and to any action taken by the President (or his delegate) under this chapter, as if such regulation had been promulgated, such order had been issued, or such action had been taken under the Economic Stabilization Act of 1970; . . ."

In *Bray v. United States*, 423 U.S. 73, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975) the Supreme Court said:

As part of the Economic Stabilization Act Amendments of 1971, Congress created the TECA [Temporary Emergency Court of Appeals] and vested it with "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder." § 211(b)(2), 85 Stat. 749. This judicial-review provision was designed to provide speedy resolution of cases brought under the Act and *"to funnel into one court all the appeals arising out of the District Courts and thus gain in consistency of decision."* S.Rep. No. 92–507, p. 10 (1971), U.S.Code Cong. & Admin.News 1971, pp. 2283, 2292. *The provision thus carved out a limited exception to the broad jurisdiction of the courts of appeals over "appeals from all final decisions of the district courts of the United States."* 28 U.S.C. § 1291. (Emphasis supplied.)

423 U.S., at p. 74, 96 S.Ct., at p. 309.

■ We have previously noted that the issues tried in this case were those framed by the Johnson Counterclaim. The allegations set forth in that Counterclaim invoked and implicated United States laws under the ESA of 1970, 12 U.S.C.A. § 1904 Note (Supp.1977); the EPAA of 1973, 15 U.S.C.A. §§ 751, *et seq.*, and the implementing regulations duly promulgated thereunder. 6 CFR § 150.353 (1974); 10 CFR § 211.63(a) (1977). These regulations spell out the two-tier pricing system established in 1973

which provides that "old oil" may not be sold above the lower tier ceiling price, 10 CFR § 212.72 (1977) and that "new oil" may not be sold above the upper tier ceiling price, 10 CFR § 212.74 (1977). Allegations against Mountain Fuel involve its alleged disregard of the government "freeze order," making "illegal" charges above the "ceiling prices," and requiring Johnson to purchase "old," "released" and "new" oil at illegal prices contrary to government regulations. Furthermore, Johnson directly challenged the validity of certain regulations promulgated pursuant to the EPAA of 1973 as interpreted by officials of the Federal Energy Administration, which agency action allegedly destroyed the "competitive viability of [Johnson] . . . and are therefore invalid." [R., Vol. V, p. 2.] Seemingly strict contract law allegations advanced by Johnson against Mountain Fuel involve disregard of and ultimate wrongful termination of the written contract and wrongful and intentional interference with Johnson's contractual relationship with Allied Chemical Company. That these "contract law" allegations are not separable from the federal acts and regulations previously discussed herein is best evidenced by these recitals in Johnson's brief:

> . . . on April 9, 1974, it [Mountain Fuel] ceased selling crude oil to Johnson. Mountain Fuel has since then treated the termination matter as though it is totally governed by general contract law. This is clearly not the case. Any right to terminate the sales of crude oil has to be found within the language of the price and relationship freeze imposed by the federal government.

[Brief of Johnson, pp. 53, 54.]

We agree.

We hold that this court is without jurisdiction to entertain this appeal. In our view, exclusive jurisdiction vests in the TECA by virtue of 28 U.S.C.A. § 1331 (Supp.1977); 15 U.S.C.A. § 754(a)(1), which incorporates § 211 of the ESA of 1970, 12 U.S.C.A. § 1904 Note (Supp.1977). *See*

*also: St. Mary's Hospital of East St. Louis, Inc. v. Ogilvie,* 496 F.2d 1324 (7th Cir. 1974); *Exxon Corporation v. Federal Energy Administration,* 516 F.2d 1397 (Em.App.1975); *Associated General Contractors, Oklahoma Division v. Laborers International Union, Loc. 612,* 489 F.2d 749 (Em.App.1973).

Our holding is buttressed by Mountain Fuel's Answering Brief to the appeal of Johnson and the Reply Brief in Mountain Fuel's Cross-appeal, to-wit:

> From the outset of appellate proceedings before this Court, it was clear that the issues under the JOHNSON appeal and the MOUNTAIN FUEL Cross-appeal would involve pricing concepts and regulations that could fall within the jurisdiction of the Temporary Emergency Court of Appeals (TECA). In point of fact, the opening Brief of MOUNTAIN FUEL poses the query of whether TECA jurisdiction is present in this case with respect to the interpretation of "posted price." That query is also at large with respect to the claim made by JOHNSON in his appeal on treble damages, attorneys' fees, and "civil penalties" under the Economic Stabilization Act of 1970.

[Brief of Mountain Fuel, p. 28.]

WE DISMISS for lack of subject matter jurisdiction.