Daniel R. MURPHY, Plaintiff-Appellant,

v.

MOUNT CARMEL HIGH SCHOOL et al., Defendants-Appellees.

Gerald A. SENESE, Plaintiff-Appellant,

v.

Robert SIMPSON et al., Defendants-Appellees.

Nos. 75–1443, 75–1631.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1976.

Decided Oct. 4, 1976.

Rehearing and Rehearing En Banc Denied Nov. 2, 1976.

Edward J. Benett, Chicago, Ill., for plaintiff-appellant in 75–1443.

James R. Cox, Thomas F. Roche, Chicago, Ill., for defendants-appellees in 75–1443.

Michael J. Smith, Chicago, Ill., for plaintiff-appellant in 75–1631.

Marvin Gittler, Chicago, Ill., for defendants-appellees in 75–1631.

Before FAIRCHILD, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

FAIRCHILD, Chief Judge.

Appellants in these two cases contend that they have asserted claims under 42 U.S.C. § 1985(3) which fulfill the requirements stated in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

I

*No. 75–1443—Murphy v. Mount Carmel High School, et al.*

The appellant, Daniel Murphy, was a tenured teacher of ten years at the appellee Mount Carmel High School, privately operated. On May 6, 1974, Murphy was dismissed by the defendants for failing to adhere to the school's recently enacted dress code. After a hearing, Murphy's dismissal was upheld.

The appellant alleges that defendant school administrators conspired to cause his dismissal from the school. Murphy claims that he openly advocated positions concerning racial and sex equality which defendants found objectionable. In addition, he alleges that his criticism of school policies regarding the hiring of minority faculty and the enforcement of a student dress code served as the real reasons for his dismissal. Murphy argues, that although he is a white male, the conspiracy by the school administrators deprived him of his First Amendment right to speak out on behalf of black people and women and resulted in his dismissal. He seeks compensatory relief and reinstatement to his position under the authority of § 1985(3). The district court, however, dismissed the appellant's complaint for failure to state a cause of action upon which relief can be granted.

*No. 75–1631—Gerald H. Senese v. Robert Simpson, et al.*

The appellant, Gerald A. Senese, was an employee of the Woodlawn Hospital in Chicago. Defendants were attempting to organize the employees, and to promote a strike. Senese was not a union member. On June 14, 1972, he alleges that while he was attempting to enter the hospital, defendants, in an effort to single out a nonstriking employee, conspired to and did assault and injure Senese. Senese complains that this assault, causing him serious injury and preventing him from attending the place of his employment, deprived him of rights guaranteed by various provisions of the Constitution. The rights specifically referred to were the right to associate with non-union employees and to engage in his lawful trade.

The appellant argues that the conspiracy was motivated by an animus against non-union hospital employees and that this sufficiently meets the *Griffin* requirement of "class-based, invidiously discriminatory animus." He asserts that he was deprived of "federally protected rights" and therefore entitled to compensatory and punitive damages under § 1985(3) and two pendent state assault and battery claims. The district court, having determined that Senese did not allege "either class-based discrimination or state involvement," dismissed the complaint for failure to state a claim upon which relief can be granted.

## II

In *Griffin,* the Supreme Court performed a two-level analysis of the complaint in order to decide whether a cause of action under § 1985(3) had been stated. It decided that the statute provided a cause of action albeit the conspirators were private persons, and construed the "language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities," as requiring "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U.S. at 102, 91 S.Ct. at 1798 (footnote omitted). The Court specifically held that to seek relief under § 1985(3) a complaint must allege four elements:

" . . . defendants did (1) 'conspire . . .' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having or exercising any right or privilege of a citizen of the United States.' " *Griffin, supra,* at 102, 91 S.Ct. at 1798.

The Court then considered, first, whether the facts alleged in the complaint before it fell within the terms of § 1985(3) as so construed. Secondly, recognizing that conduct within the terms of the statute might be beyond the power of Congress to regulate, the Court identified the source of congressional power to reach the conduct alleged.

The plaintiffs in *Griffin* were Negroes; the alleged purpose of the conspiracy was to prevent plaintiffs and other Negro-Americans from seeking equal protection of the laws and enjoying equal rights, privileges and immunities of citizens, including the right to travel, of association and of speech. The Court readily found that the allegations of the purpose of the conspiracy showed the necessary "racial . . . class-based, invidiously discriminatory animus," and that personal injury resulting from acts done in furtherance of the conspiracy was adequately alleged.

The Court then identified two sources of congressional power to impose liability for the conduct alleged. The first source was the Thirteenth Amendment: "We can only conclude that Congress was wholly within its power under § 2 of the Thirteenth Amendment in creating a statutory cause of action for Negro citizens who have been

the victims of conspiratorial, racially discriminatory private action aimed at depriving them of the basic rights that the law secures to all free men." 403 U.S. at 105, 91 S.Ct. at p. 1800. The Court further concluded that the complaint sufficiently alleged that plaintiffs' "federal right to travel interstate was one of the rights meant to be discriminatorily impaired by the conspiracy," and that imposition of liability for conduct with such purpose is within the power of Congress to protect the right of interstate travel. 403 U.S. at 106, 91 S.Ct. at 1800.

### III

■ Murphy's complaint is extremely detailed, if not prolix, and the theory of the asserted § 1985(3) cause of action is difficult to discern. It seems fair to say that the purpose of the conspiracy alleged was to deprive Murphy of his freedom of speech at the school, concerning school policies. Curtailment of speech, apparently, was the claimed deprivation "of the equal protection of the laws, or of the equal privileges and immunities under the laws." As will be developed hereinafter, a § 1985(3) federal cause of action for injury arising out of a purely private conspiracy to interfere with freedom of expression, without state involvement, is not constitutionally supportable.

■ It is true that Murphy is alleged to have spoken, among other things, against

discriminatory practices of the school toward black students and teachers and women teachers. The complaint, in our view, falls short of charging that the conspiracy was aimed at discriminatory treatment of black persons or women. It never identifies the legal rights of which the conspirators wished to deprive members of those classes. Even if the complaint did charge a conspiracy to deprive members of those classes of equal protection of the laws or of equal privileges and immunities under the laws, consistent with *Griffin*, the question would remain whether a plaintiff who is an advocate for but not a member of the class can recover under § 1985(3) and whether the likelihood of fomenting discrimination by curtailing Murphy's speech at one school is not just too remote from the purposes of § 1985(3). At least in *Dombrowski v. Dowling*, 459 F.2d 190, 195, this court held that a white plaintiff cannot claim a cause of action on the Thirteenth Amendment theory of *Griffin*. We conclude that the complaint at bar does not require us to resolve these questions.

■ Senese alleges that the object of the conspiracy was to deprive him of his First Amendment right to associate with his fellow non-union employees. He claims that the assault upon him was an act in furtherance of this conspiracy.[1] As a result of this act, he suffered bodily injury, and impairment of his right to freely associate with non-union workers and the right to attend and perform his job.[2]

1. Senese argues that the conspiracy against him was motivated by animus against the non-union employees of the hospital, and that this sufficiently meets the *Griffin* requirement of "class-based, invidiously discriminatory animus." The class is small and its constituency dependent on circumstances subject to ready change. Its character is quite different from classes based on race, ethnic origin, sex, religion, and political loyalty. Although we do not reach the question, we doubt whether it fulfills the *Griffin* requirement. We do note, however, that for purposes of § 1985(3) religious groups have constituted a class, *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973), as well as supporters of a political candidate, *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973), and *Richardson v. Miller*, 446 F.2d 1247 (3rd Cir. 1971), and debtors seeking relief under the bankrupt-

cy laws, *McLellan v. Mississippi Power & Light Co.*, 526 F.2d 870 (5th Cir. 1976). Senese has also argued that a showing of class-based invidiously discriminatory animus is unnecessary. This proposition seems to fly in the face of *Griffin*, and has been rejected by this court. *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538 (1975).

2. The right to engage in a lawful trade has been held to be a privilege and immunity of state citizenship, and consequently not subject to the protection of the Fourteenth Amendment and its implementing legislation. Slaughter House Cases, 83 U.S. (16 Wall.) 36, 74–75, 21 L.Ed. 394 (1872). This right is therefore not assertable under § 1985(3). The rights and privileges of National citizenship include the right to petition Congress, to vote for National officers, to

Appellants argue that curtailment of their interests secured by the First Amendment is a deprivation of equal protection of the law, and, therefore, satisfies the requirements of a § 1985(3) complaint as determined in *Griffin*. Such a denial is actionable under § 1985(3) if the Fourteenth Amendment may be interpreted as a source of congressional power for the protection of these First Amendment interests.

This question was not decided by *Griffin*. Decisions of this court, however, have indicated possible solutions. In *Dombrowski v. Dowling*, 459 F.2d 190 (1972), this court gave weight to the historical relationship between § 1983 and § 1985(3), and concluded that it is essential, in construing § 1985(3), to identify the interests Congress intended to protect from unequal treatment. "The breadth of the statute's coverage is yet to be determined, but three categories of protected rights have been plainly identified. *Griffin* gives express recognition to a black citizen's Thirteenth Amendment rights and to his federal right to travel interstate; the title of the statute expressly identifies the third category, namely, rights protected by the Fourteenth Amendment. We think the § 1983 cases make it clear that in this third category a 'state involvement' requirement must survive *Griffin*." 459 F.2d at 195 (footnotes omitted). The court decided that "the right secured by the Equal Protection clause of the Fourteenth Amendment is a right to protection against unequal treatment by a state." This court reaffirmed the *Dombrowski* rationale in *Cohen v. IIT*, 524 F.2d 818 (1975), where there was an alleged conspiracy to cause a private institution to discriminate against women employees.

However, we noted in *Cohen* that the court was not "faced with the question whether the *Dombrowski* rationale would apply to a right protected by the First Amendment which in terms is only a pro-

tection against State action, but which is often accorded special deference." 524 F.2d at 829–30, fn. 33. With all respect, we are unable to discern a reasoned distinction so that a privately imposed restriction on speech, either as the purpose or the result of a conspiracy, would be actionable under § 1985(3) while the private impairment of some other interest constitutionally protected only from governmental interference would not be.

The guaranties of the First Amendment run only against the federal government, not private interference. By incorporation into the due process clause of the Fourteenth Amendment these guaranties also run against the state. *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925); *Edwards v. South Carolina*, 372 U.S. 229, 235, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). The Fourteenth Amendment "erects no shield against merely private conduct, however discriminating or wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948).

Appellants assert, however, that section 5[3] of the Fourteenth Amendment provides Congress with the power to enact legislation to implement the guaranties of this Amendment. Section 1985(3), they argue, was written to provide a cause of action against private conspirators invading an interest protected from state impairment by the Fourteenth Amendment.

Neither the legislative history of the Amendment nor any holding of the Supreme Court supports this proposition. Nothing in the debates upon the adoption of the Amendment conclusively answers the question whether Congress has the power to grant statutory protection against private interference with personal interests protected from state interference by the Fourteenth Amendment. See Cox, "The Supreme Court Forward," 80 Harv.L.Rev. 91

enter public lands, to be protected against violence while in the custody of a United States Marshal, and to inform the United States authorities of violations of its laws. *Twining v. New Jersey*, 211 U.S. 78, 97, 29 S.Ct. 14, 53 L.Ed. 97 (1908).

3. Amendment XIV. Section 5. Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

(1966). In addition, the Supreme Court in finding the criminal counterpart of § 1985(3), § 5519 of the Revised Statutes, unconstitutional specifically held that such a law, ". . . directed exclusively against the action of private persons, without reference to the laws of the State or their administration by her officers, . . is not warranted by any clause in the Fourteenth Amendment. . . ." *United States v. Harris*, 106 U.S. 629, 640, 1 S.Ct. 601, 610, 27 L.Ed. 290 (1882).

 The *Griffin* Court did not reach the question of the constitutional basis of § 1985(3) under the Fourteenth Amendment. It found sufficient authority under the Thirteenth Amendment and the rights of National citizenship for the applications of the statute operative in that case. *Griffin, supra,* 403 U.S. at 104, 91 S.Ct. 1790. Nonetheless, we must consider the holding in *Harris* as a strong indication that the Court, unless inclined to overrule this clear precedent, would not find in section 5 the necessary power to support the interpretation of § 1985(3) which the appellants assert.

 We find further support for this analysis of the scope of section 5 in a case decided many years after *Harris* but before *Griffin.* Despite the views in the concurring and dissenting opinions of Justices Clark and Brennan, the Court in *United States v. Guest,* 383 U.S. 745, 755, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) did not choose to consider what kind of legislation, if any, "Congress might constitutionally enact under § 5 of the Fourteenth Amendment to implement . . . [the Equal Protec-

tion] Clause or any other provision of the Amendment." Rather, the Court maintained, as we do here, that the Fourteenth Amendment "'protects the individual against state action, not against wrongs done by individuals.'" 383 U.S. at 755, 86 S.Ct. at 1176 (citing *United States v. Williams,* 341 U.S. 70, 92, 71 S.Ct. 581, 95 L.Ed. 758 (1951)) (dissenting opinion). Therefore, faced with these precedents and inconclusive legislative history, we do not find in section 5 the constitutional authority which would permit Congress to enact a right of action against private parties, without any state involvement,[4] for infringement of interests which are protected from state impairment by the Fourteenth Amendment.

 We are aware that our holding squarely conflicts with the position taken by the Eighth Circuit.[5] In *Action v. Gannon,* 450 F.2d 1227, 1235 (8th Cir. 1971) (en banc) the court held that "Congress was given the power in § 5 of the Fourteenth Amendment to enforce the rights guaranteed by the Amendment against private conspiracies." In reaching this decision the court relied on the concurring and dissenting opinions expressed in *Guest* and several studies[6] of the legislative history of the Fourteenth Amendment. We find this argument and its supporting evidence unpersuasive. Rather, we will adhere to the view that Fourteenth Amendment rights are assertable as a shield to governmental action or involvement; this proposition is also applicable to First Amendment rights, incorporated in the Fourteenth, which are framed as a prohibition against action by the federal government.[7] See *Bellamy v.*

---

4. While we need not discuss the extent of state involvement required within the context of § 1985(3), the Supreme Court "has found state action of a nature sufficient to create rights . . . even though the participation of the State was peripheral, or its action was only one of several co-operative forces lending to the constitutional violation." *United States v. Guest,* 383 U.S. at 755, 86 S.Ct. at 1177.

5. The Third Circuit, in a less exhaustive opinion, has also held that § 1985(3) provides a cause of action for privately imposed restriction on speech. *Richardson v. Miller,* 446 F.2d 1247 (3rd Cir. 1971).

6. H. E. Flack, *The Adoption of the Fourteenth Amendment,* 277 (1908) and R. J. Harris, *Quest for Equality,* 53 (1960).

7. This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing in banc on the position above taken, in conflict with the Third and Eighth Circuits.

 Circuit Judge Swygert, however, filed the following statement:

 "SWYGERT, *Circuit Judge.* Although I voted against a rehearing *en banc,* I must register my dissent from some of the lan-

*Masons' Store, Inc.*, 508 F.2d 504, 507 (4th Cir. 1974).

The suggested extension of the scope of actions brought under § 1985(3) to include private conspiracies to curtail expression because of a class-based invidiously discriminatory animus or which produce a private impairment of expression as a result of an otherwise actionable conspiracy, is, of course, not required by *Griffin.* The Supreme Court noted that the facts alleged in *Griffin* brought the cause of action "close to the constitutionally authorized core of the statute." 403 U.S. at 107, 91 S.Ct. at 1801. The extensions urged on us here would embrace conduct far from that core, and, we think, would be unsound in the absence of clearer direction by the Supreme Court.[8]

The judgments appealed from are AFFIRMED.

---

guage in the opinion of Chief Judge Fairchild. The court could have arrived at the identical result without making a generalized pronouncement about the power of Congress under section 5 of the Fourteenth Amendment.

Under the decisions of this court in *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir. 1972), and *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir. 1975), a section 1985(3) action may be brought against purely private parties. If, however, a plaintiff invokes constitutional rights under section 1 of the Fourteenth Amendment, the protected rights must be related to a state activity; otherwise, a section 1985(3) action would become a 'general federal tort law.' *Griffin v. Breckenridge,* 403 U.S. 88, 102 [91 S.Ct. 1790, 29 L.Ed.2d 338] (1971). *Dombrowski, supra,* at 194–95. In the instant case, plaintiffs are asserting a First Amendment claim without an allegation that their rights of speech and association were in any way intertwined with state activities. Therefore, they did not state a cause of action under section 1985(3).

Judge Fairchild states categorically that 'we do not find in section 5 the constitutional authority which would permit Congress to enact a right of action against private parties, without any state involvement, for infringe-ment of interests which are protected from state impairment by the Fourteenth Amendment.' (Footnote omitted.) This language, in my opinion, lends itself to the interpretation that a section 1985(3) action cannot be maintained unless the state through its agent was in some manner involved in the commission of the alleged offending conduct."

8. Appellant, Senese, argues that the state is involved in the deprivation of his rights by prohibiting suits against unincorporated associations, in its own name, for money damages. *Von Solbrig Memorial Hospital v. Licato,* 15 Ill.App.3d 1025, 1029, 305 N.E.2d 252 (1973). While arguably this grant of immunity might constitute "state action or involvement," the deprivations of the appellant's rights did not result as a consequence of this action. See *Lucas v. Wisconsin Electric Power Company,* 466 F.2d 638, 647 (7th Cir. 1972) (*en banc*). The alleged violation of Senese's First Amendment rights occurred when the appellant was attacked by the union members. The immunity provided by the state did not sanction or support this attack, and, therefore, does not interject the state into this case. See *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 177, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).