**Sally-Ann HACK, Plaintiff,**

v.

**OXFORD HEALTH CARE, INC., Sydney J. Williams, Vice-President and Secretary of Oxford Health Care, Inc., Jan Courtney, Administrator of Health Services of Edgewood View Nursing Home, Ruth Ann Hancock, Director of Health Services of Edgewood View Nursing Home, Defendants.**

**No. L82–4.**

United States District Court, N.D. Indiana, Hammond Division.

April 14, 1983.

Leslie Guyton, Lafayette, Ind., Louis A. Lessem, South Bend, Ind., Ivan E. Bodensteiner, Valparaiso, Ind., for plaintiff.

John C. Dibble, Lafayette, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

### I.

This case is presently before the Court on Defendants' Motion to Dismiss plaintiff's claims under 42 U.S.C. § 1985(2) and (3). Oral argument on defendants' motion was held in Lafayette, Indiana on November 1, 1982. Both parties have fully briefed the issues and the matter is ripe for ruling.

For purposes of ruling on a motion to dismiss, all allegations contained in plaintiff's complaint must be construed in the light most favorable to the plaintiff, and the allegations must be taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The plaintiff, Sally-Ann Hack, was employed as a licensed practical nurse at Edgewood View Nursing Center (EVNC) from November 2, 1980 until her termination on January 28, 1981. EVNC is a nursing home licensed to operate by the Indiana State Board of Health as an intermediate care facility, and receives Medicare payments from the United States Department of Health and Human Services (HHS) and the Indiana Department of Public Welfare. EVNC is subject to compliance with federal and state statutory and regulatory requirement, including compliance with the "Residents' Bill of Rights" found at 42 C.F.R. 442.311. Defendant Oxford Health Care, Inc., owns EVNC, and defendant, Sydney J. Williams, is vice-president and secretary of Oxford Health Care, Inc. Defendant, Jan Courtney, is the Administrator at EVNC and defendant, Ruth Ann Hancock, is the director of nurses at EVNC.

On January 26, 1981 plaintiff testified before the House Aging Committee of the Indiana General Assembly concerning specific complaints which residents of EVNC and their family members had requested her to report. On January 28, 1981 plaintiff was terminated from her employment solely because of her testimony. Plaintiff alleges her discharge was in contravention of a substantial public policy, namely, the need of legislative committees to gather relevant information on pending legislation without interference. The plaintiff further alleges that the defendants conspired and intended to harm the plaintiff and the defendants were motivated by a class-based animus directed at those persons using the state political process to seek equal protection and enforcement of the laws for residents of nursing homes in Indiana.

### II.

Based on the foregoing factual allegations, the plaintiff claims a deprivation of

her rights secured by 42 U.S.C. § 1985(2) in that she was injured for lawfully attempting to enforce the rights of Indiana nursing home residents to equal protection of the laws and her rights secured by 42 U.S.C. § 1985(2) and (3) in that the actions of defendants infringed on her rights protected by the First and Fourteenth Amendments, rights inherent in national citizenship and rights protected by the Federal Medicaid Act. For the following reasons, plaintiff's claims based on 42 U.S.C. § 1985(2) and (3) will be dismissed.

■ Plaintiff's claims under 42 U.S.C. § 1985 must fail for several reasons. First, the allegedly applicable portion of § 1985(2) and § 1985(3) require that there must be some racial or otherwise class based, invidiously discriminatory animus behind the conspirators' action. See, e.g., *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Williams v. St. Joseph Hospital,* 629 F.2d 448, 451 (7th Cir.1980); *Murphy v. Mount Carmel High School,* 543 F.2d 1189 (7th Cir.1976). Plaintiff has alleged that the defendants were motivated by a class-based animus directed at "those persons using the state political process to seek equal protection and enforcement of the laws for residents of nursing homes in Indiana." The action taken by defendants in the case presently before the Court was directed only against the plaintiff as an individual and not because she was a member of some class or race. A violation of equal protection might be shown if the action against plaintiff was part of a general pattern of discrimination or was based on impermissible considerations of race or class but plaintiff has made no allegations to support such a finding or implication. The plaintiff has only alleged that *she* was discharged for testifying before the Indiana General Assembly on behalf of nursing home residents and thus she has failed to meet the class-based discrimination requirements of a § 1985 claim.

■ Even assuming, however, that plaintiff is a member of a "class", that "class" is not the kind of class that could support a § 1985 claim. In *Griffin v. Breckenridge,* *supra,* the Supreme Court found a racial class-based animus to be actionable under § 1985, but did not decide whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable. 403 U.S. at 102 n. 9, 91 S.Ct. at 1798 n. 9. But, even assuming *arguendo* that a nonracial class-based animus meets the *Griffin* requirement, plaintiff's purported class is not the kind of class based on race, ethnic origin, sex, religion or political loyalty that could support a § 1985 claim. See, *Askew v. Bloemker,* 548 F.2d 673, 678 (7th Cir.1976); *Murphy v. Mount Carmel High School,* 543 F.2d at 1192 n. 1. Plaintiff attempts to characterize the "class" as one discriminated against because of political beliefs or associations. This argument is not supported by the allegations in this case. Plaintiff was allegedly discharged for addressing the political process on behalf of nursing home residents, not because of her political beliefs or associations. Plaintiff also maintains that the "class" she purports to be a member of has been recognized as needing special protection and which warrants special federal assistance in protecting their civil rights, citing *De Santis v. Pacific Tel. & Tel. Co., Inc.,* 608 F.2d 327 (9th Cir.1979), and a recent bill passed by the Indiana General Assembly, Public Law No. 29, Section 22(a)(4) which creates criminal penalties for employers who retaliate against advocates of nursing home residents. This Court does not find this argument persuasive. In *De Santis* the plaintiffs argued that homosexuals were a class to be accorded the special protection of § 1985. The court disagreed reasoning that the "courts have not designated homosexuals a 'suspect' or 'quasi-suspect' classification so as to require more exacting scrutiny of classifications involving homosexuals." 608 F.2d at 333. Likewise, in the case presently before this Court, persons who address the political process on behalf of nursing home residents have not been designated as a suspect or quasi-suspect classification requiring closer scrutiny. Further, the fact that Indiana has passed a criminal statute dealing with retaliatory discharge for advocates of nursing home residents does

not support a claim that those individuals require "special federal assistance in protecting their civil rights." An individual has no constitutional right to certain employment though a discharge for impermissible reasons, which reasons may have violated that individual's constitutional rights, may give rise to an action in tort for wrongful discharge. That alone, however, cannot sustain a § 1985 action. Nor does the fact that Indiana has chosen to impose criminal sanctions for retaliatory discharge in certain circumstances change the nature of the action nor raise those individuals to a class of citizens requiring special federal assistance.

The plaintiff then argues that residents of nursing homes may be a class within the meaning of § 1985. The complaint in this case does not allege that the conspiracy was aimed at discriminatory treatment of nursing home residents nor does it identify the legal rights of which the conspirators wished to deprive members of the class. The complaint states that plaintiff was "assisting the residents in exercising their rights as citizens ... [and] was acting on behalf of and as agent for the residents of EVNC under 42 C.F.R. 422.311." Thus, the complaint falls short of even alleging a § 1985 claim on behalf of the nursing home residents. Based on the foregoing, plaintiff has failed to fulfill the required showing of a class-based animus behind the conspirators' actions and her claims based on 42 U.S.C. § 1985(2) and (3) must be dismissed.

### III.

The defendants next argument in support of their motion to dismiss is that the plaintiff has failed to allege and show the required state action to state a claim under § 1985. Plaintiff argues that no state action is required under § 1985(2) because that section creates substantive rights and not just a cause of action for enforcing rights and that state action is only required in certain circumstances under § 1985(3). The Court will consider the issues separately below.

■ Title 42 United States Code, Section 1985(2) provides in pertinent part:

[O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

The plaintiff maintains that the above language creates a substantive right to be free from private conspiracies aimed at interfering with "due course of justice" in the states and therefore that her discharge for testifying before the Indiana General Assembly can form the basis for a claim under § 1985(2). Whether § 1985(2) creates substantive rights or merely provides a remedy for the violation of other rights does not need to be decided by this Court, though such an interpretation appears questionable. It is clear that the language "due course of justice in any State or Territory" has to do with state or territorial courts and judicial enforcement of rights in those courts. *Britt v. Suckle,* 453 F.Supp. 987, 996 (E.D. Tex.1978); See *Williams v. St. Joseph Hospital,* 629 F.2d 448, 451 (7th Cir.1980). The plaintiff essentially requests that this Court extend the coverage of this section to include testifying before a state legislature. This Court declines to do so. Accordingly, plaintiff has failed to state a claim under 42 U.S.C. § 1985(2).

The requirement of state action for claims under 42 U.S.C. § 1985 has been considered by the Seventh Circuit in a series of cases beginning with *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir.1972), and *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir.1975). In both of these decisions, Judge, now Justice, Stevens made a careful analysis of the historical foundation of § 1985 in light of the Supreme Court decision in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

In *Griffin,* the Supreme Court held that a cause of action could be stated under

§ 1985(3) even if the conspirators were private persons, so long as there was an invidiously discriminatory animus behind the conspirators action. 403 U.S. at 102, 91 S.Ct. at 1798. In his analysis in *Dombrowski,* Judge Stevens noted that, in addition to Thirteenth Amendment rights and the right to interstate travel, § 1985 was meant to protect Fourteenth Amendment rights. In fact, the Civil Rights Act of 1871, from which § 1985 is derived, had been passed for that express purpose. 459 F.2d at 195, n. 13.

Based on this analysis, *Dombrowski* held that the requirement of "state involvement" survives *Griffin* in Fourteenth Amendment claims. *Id.* The court went on to hold that there is no deprivation of "equal protection of the laws" within the meaning of § 1985(3) if there is no state involvement whatsoever. 459 F.2d at 196. This same analysis was applied in the later *Cohen* case, which also held that state involvement is required to reach Fourteenth Amendment claims under 42 U.S.C. § 1985.

In *Murphy v. Mount Carmel High School, supra,* the Seventh Circuit affirmed the holdings in the *Dombrowski* and *Cohen* cases. *Murphy* involved a claim under § 1985(3) by a teacher who claimed a violation of his First Amendment rights to speak out on behalf of black people and women. Sustaining the dismissal in the district court, the Court of Appeals held that a federal cause of action under the Civil Rights Act of 1871 alleging an injury stemming from a purely private conspiracy to interfere with freedom of expression, without state involvement, is not constitutionally supportable. 543 F.2d at 1192.

Thus, based on the foregoing analysis, plaintiff's claims based on alleged violations of her rights secured by the First and Fourteenth Amendments to the Constitution of the United States require state action. The plaintiff maintains, however, that she has alleged the requisite state action to support her First and Fourteenth Amendment claims and that she seeks to enforce other substantive rights under 42 U.S.C. § 1985(3) that do not require state action.

The Court will first address plaintiff's assertions that she can maintain an action under § 1985(3) to enforce other substantive rights, including (1) the right of citizens to petition their government which she alleges is a right inherent in national citizenship, (2) rights under the federal Medicaid Act, 42 U.S.C. § 1396 et seq. and implementing regulations, 42 C.F.R. § 442.311 and, (3) rights under Indiana law. The Court will then consider whether plaintiff has alleged the requisite state action.

■ Plaintiff maintains that the right to petition the government is a right inherent in national citizenship and that a violation thereof can form the basis of a Section 1985 claim. The Court does not find this argument supported by the law. In *United States v. Cruikshank,* 92 U.S. 542, 23 L.Ed. 588 (1876), the Supreme Court stated:

The first amendment to the Constitution prohibits Congress from abridging "the right of the people to assemble and to petition the government for a redress of grievances." This, like the other amendments proposed and adopted at the same time, was not intended to limit the powers of the state governments in respect to their own citizens, but to operate upon the national government alone. (citations omitted) . . . .

The particular amendment now under consideration assumes the existence of the right of the people to assemble for lawful purposes and protects it against encroachment by Congress. The right was not created by the amendment; neither was its continuance guaranteed, except against congressional interference. For their protection in its enjoyment, therefore, the people must look to the States. The power for that purpose was originally placed there, and it has never been surrendered to the United States. The right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances, or for anything else connected with the powers or duties of the national government, is an attribute of national citizenship, and, as such, under the protection

of, and guaranteed by, the United States. The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances.

92 U.S. at 552.

The above language indicates that the right to petition the government is a fundamental right and existed before the Constitution of the United States was adopted. The First Amendment to the Constitution guarantees that that fundamental right applies to the federal government, thereby making it the right of a national citizen and protectable by the United States. Thus, Congress can provide a remedy for the violation of a citizens right to petition the federal government as guaranteed by the First Amendment.

The same cannot be said, however, when an individual is asserting his or her right to petition a State government. In the case presently before the Court, the plaintiff essentially argues that she can use § 1985(3) to enforce substantive rights to petition the State government that arise from two separate sources, namely, the Indiana Constitution, Art. I, § 31 and her fundamental right to petition the government inherent in a republican form of government. This Court does not find these arguments persuasive. It should be noted that the plaintiff did not allege a violation of the Indiana Constitution in the complaint but attempts to maintain a claim for its violation in the pleadings. This Court will address the issue despite the shortcomings of the complaint.

The Indiana Constitution, Art. I, § 31, similar to the provision contained in the First Amendment of the Constitution of the United States regarding the right to petition the government, prohibits the state government from enacting a law which restrains the inhabitants of the State of Indiana from applying to the General Assembly for redress of grievances. Thus, an individual as a state citizen is similarly guaranteed a constitutional right under the Indiana Constitution to petition the government which cannot be abridged by the state government. The plaintiff, however, has not alleged facts sufficient to state a cause of action for a violation of her state constitutional right to petition the government. The plaintiff has alleged that private parties, not the government, have violated her right to petition the government which clearly does not fall within the restrictions imposed by the Indiana Constitution. The plaintiff's argument regarding the enforcement of a claim for this alleged constitutional violation is without foundation. Thus, the only remaining source for an alleged violation of her right to petition the government is her fundamental right to petition the government inherent in a republican form of government.

■ The Tenth Amendment to the Constitution of the United States provides that: "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X. The *Cruikshank* opinion clearly states that the power to protect the enjoyment of the fundamental right to petition the government for a redress of grievances was originally in the States and has never been surrendered to the United States. 92 U.S. at 552. After thorough and extensive research, this Court has found no case or statute that would indicate that the states have, subsequent to the decision in *Cruikshank*, surrendered that power to the United States. Accordingly, the plaintiff must look to the State for a remedy for the alleged violation of her fundamental right to petition the government and cannot use Section 1985(3) as a means of enforcing or protecting that right.

■ The plaintiff also argues that she can maintain an action under § 1985(3) to enforce other substantive rights under Indiana law, namely, the right to be free from wrongful or retaliatory discharge from employment. This Court finds this argument unpersuasive. In *Griffin v. Breckenridge*, 403 U.S. at 101–102, 91 S.Ct. at 1798, the Supreme Court in discussing the coverage of § 1985(3) stated:

That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorical interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, "that Congress has a right to punish an assault and battery when committed by two or more persons within a State".

This language clearly indicates that although the coverage of § 1985(3) is to be interpreted broadly, the coverage is not without limits. The powers of the United States are limited to those granted it by the Constitution of the United States and its enabling provisions. Thus, in order to assert her claim for wrongful or retaliatory discharge under § 1985(3), the plaintiff must identify the source of congressional power to reach the private conspiracy alleged in her complaint that forms the basis of her wrongful discharge claim. The plaintiff has failed to do so and this Court has found no source that could support such a claim. In fact, the Supreme Court has never held that the right to any particular employment is a right of national citizenship or derives from any other right created by the Constitution. See, *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 380, 99 S.Ct. 2345, 2353, 60 L.Ed.2d 957 (1979). Thus, plaintiff cannot maintain an action under § 1985(3) for the alleged wrongful or retaliatory discharge from employment.

### IV.

Lastly, plaintiff claims that she can enforce substantive rights under the Medicaid Act, 42 U.S.C. § 1396 *et seq.,* and implementing regulations, 42 C.F.R. § 422.311 through § 1985(3), or in the alternative, that she can sue directly under the Act and Regulations. The Court does not find that such claims are supported by the law.

At the outset, it should be noted that the plaintiff has not alleged in her complaint a cause of action directly under the Medicaid Act and implementing regulations but rather has sought to enforce rights secured by 42 U.S.C. § 1985(2) and (3) for alleged violations of rights protected by the federal medicaid act and implementing regulations, particularly 42 C.F.R. § 422.311. The Court will address the private right of action issue despite the shortcomings of the complaint.

In determining whether a particular statutory scheme creates an implied private remedy, a court must follow the guidelines set forth by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In that case, the court established a four-part test to determine if a particular statutory scheme created an implied private remedy:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to apply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted).

In the case presently before the Court, the plaintiff does not claim to be a resident of a nursing home, but rather an employee of a nursing home. 42 C.F.R. § 422.311 states:

> The ICF must have written policies and procedures that insure the following rights for each resident.

The specific section under the same regulation which plaintiff claims confers a federal cause of action in this case is as follows:

> (d) *Exercising rights.* Each resident must be—

(1) Encouraged and assisted to exercise his rights as a resident of the ICF and as a citizen; and

(2) Allowed to submit complaints or recommendations concerning the policies and services of the ICF to staff or to outside representatives of the resident's choice or both, free from restraint, interference, coercion, discrimination, or reprisal.

42 C.F.R. § 422.311. The plaintiff alleges in her complaint that Edgewood View Nursing Center has the requisite "Resident Bill of Rights" which complies with 42 C.F.R. § 422.311 and which adds the additional language that each resident "has a right of action for damages or other relief for deprivations or infringements of his right to adequate and proper treatment and care established by any applicable statute, rule, regulation, or contract".

Clearly, both 42 C.F.R. § 422.311 and EVNC's own "Resident Bill of Rights" establish rights for residents of the nursing center, not for members of the staff or those claiming to act on their behalf. Applying the reasoning in the *Cort* decision, the plaintiff is not "one of the class for whose especial benefit the statute was enacted." 422 U.S. at 78, 95 S.Ct. at 2088.

Following the same reasoning in the *Cort* decision the statute clearly does not explicitly or implicitly create such a remedy for the benefit of the plaintiff and it would not be consistent with the underlying purposes of the statute to imply the remedy which the plaintiff suggests exists. This is an action by the plaintiff based on an alleged deprivation of rights stemming from her termination of employment at Edgewood View Nursing Center. The relationship between employer and employee is one which has been "traditionally relegated to state law . . . so that it would be inappropriate to infer a cause of action based solely on federal law." *Id.* Accordingly, plaintiff cannot maintain an action directly under the Medicaid Act and implementing regulations and, inasmuch, as she cannot maintain an action directly because she cannot assert her own rights under the Act, she is also precluded from attempting to use 42 U.S.C. § 1985(2) and (3) as a conduit for enforcing those rights.

Furthermore, plaintiff could not use 42 U.S.C. § 1985(3) to maintain an action to redress violations of rights created by the Medicaid Act and implementing regulations, even if they did create substantive rights on her behalf. The rights guaranteed by the Medicaid Act are statutory rights and 42 U.S.C. § 1985(3) was not intended to provide a remedy for the violation of statutory rights. See, *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 385, 99 S.Ct. 2345, 2355, 60 L.Ed.2d 957 (1979) (Stevens, J., concurring).

## V.

The final issue to be addressed by this Court is whether the plaintiff has alleged sufficient state action to support her § 1985(3) claims based on a violation of her rights protected by the First Amendment to the Constitution of the United States and applied to the States through the Fourteenth Amendment. The plaintiff essentially argues that the facts that nursing homes are extensively regulated and receive state funds and that Indiana has statutorily created an exclusive public function with regard to providing institutional care for its aged and infirm citizens is sufficient to support a finding of state action in this case. This Court does not find this argument persuasive.

In *Blum v. Yaretsky*, —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), the Supreme Court addressed the issue of state action in a case brought by nursing home residents receiving medicaid benefits. While the facts of the case presently before this Court are not identical to the facts present in *Blum,* the same analysis for determining state action is applicable and clearly indicates that the requisite state action to support a Fourteenth Amendment claim is lacking in this case.

Therefore, for all of the foregoing reasons, plaintiff's claims under 42 U.S.C. § 1985(2) and (3) are DISMISSED. Fur-

ther, inasmuch as there are no remaining federal claims remaining in this cause of action, plaintiff's pendent state claims are also DISMISSED. See, *e.g., Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072 (7th Cir.1982).

SO ORDERED.