Andrea DWORKIN, a citizen of New York; Plaintiff,

v.

HUSTLER MAGAZINE, INC., a California corporation; Larry Flynt, a citizen of California; Flynt Distributing Company, Inc., a California corporation, Defendants.

No. C85–0111–B.

United States District Court, D. Wyoming.

April 18, 1986.

Gary L. Shockey, Elizabeth Greenwood, Spence, Moriarity & Schuster, Jackson, Wyo., for plaintiff.

George E. Powers, Godfrey & Sundahl, Cheyenne, Wyo., Alan L. Isaacman, Cooper, Epstein & Hurewitz, Beverly Hills, Ca., for defendants.

## ORDER ON MOTIONS

BRIMMER, Chief Judge.

The above-entitled matter came before the Court pursuant to several motions filed by the parties in this matter. The Court orally ruled on these motions from the bench, and now enters this written order to set out more fully the reasoning of the Court.

The central focus of this case involves a suit filed by Andrea Dworkin against Larry Flynt and *Hustler* magazine alleging libel

and defamation. Several other parties and claims are also involved in this matter, and it was to these parties and claims that the various motions now at issue were addressed.

In their first motion defendants asked the Court to dismiss plaintiffs' claims against Inland Empire Periodicals and Park Place Market. Inland is a regional magazine distributor of between 700 and 800 different magazine titles, including *Hustler*. Park Place is a small convenience store that offers approximately 100 magazines for sale, also including *Hustler*. Earlier this Court held that Park Place had been fraudulently joined by the plaintiffs to destroy diversity, concluding that plaintiffs could not state a valid cause of action against Park Place as a mere distributor of *Hustler*. 611 F.Supp. 781 (D.Wyo.1985). The same reasoning holds true for Inland Empire Periodicals.

■ Section 581 of the Second Restatement of Torts states that "one who only delivers or transmits defamatory matter published by a third person is subject to liability if, but only if, he knows or had reason to know of its defamatory character." The relevant affidavits show that neither of these defendants had such knowledge, and plaintiffs have failed to produce any evidence to the contrary. This Court agrees with the holding in *Lewis v. Time, Inc.*, 83 F.R.D. 455, 465 (E.D.Cal. 1979), *aff'd* 710 F.2d 549 (9th Cir.1983), that "specific allegations concerning actual knowledge or giving rise to a duty to investigate are required in any lawsuit seeking to impose liability on a distributor for libelous material in a periodical over which he has no editorial control." Plaintiffs have failed to meet this standard of proof for both Park Place Market and Inland Empire Periodicals, and therefore these defendants must be dismissed from this case.

■ Regarding defendants' motion to dismiss Count XIV, the Court concluded that there is no right of private action based on W.S. §§ 1–29–106, and 6–4–301–2, the Wyoming obscenity statutes. If *Hustler* is obscene, the Wyoming Attorney Gen-eral is free to decide to prosecute. However, Andrea Dworkin, as a private citizen, has no right to prosecute a criminal action. *See e.g. Miller v. Mallery*, 410 F.Supp. 1283 (D.Or.1976). The Court is convinced that if faced with the question, the Wyoming Supreme Court would follow its established rule of strictly construing criminal statutes, and would refuse to imply a private right of action into a criminal obscenity statute. *See Horn v. State*, 556 P.2d 925 (Wyo.1976). Accordingly, Count XIV must be dismissed.

Defendants also asked for judgment on the pleadings on Counts IX and XIII of plaintiffs' First Amended Complaint. In Count IX plaintiff Dworkin contends that defendants, by publishing the materials in question, have engaged in continued malicious attacks on her character "under the guise of freedom of speech which have amounted to an affirmative campaign on the part of *Hustler* magazine to thwart the political and social activities of Andrea Dworkin, as well as to silence her exercise of her right to free speech." In other words, Ms. Dworkin argues that defendants have wrongfully interfered with her right to free speech guaranteed by the First Amendment.

■ Defendants counter that even if the publications in question have intimidated Ms. Dworkin from continuing to exercise her constitutional right to speak out against pornography, she nevertheless has failed to state a valid claim. Reluctantly, the Court must agree with defendants. *Hustler* magazine and Larry Flynt are simply not state actors, and a plaintiff must plead state action in order to pursue a constitutional claim. The First Amendment is a limitation only on actions of a government, not on the acts of private citizens. *See e.g. Hudgens v. N.L.R.B.*, 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976).

In *Barham v. Edwards*, 566 F.Supp. 1497 (M.D.Tenn.1983), the district court was faced with an attempt by a plaintiff to collect money damages for an alleged viola-

tion of his constitutional rights by his lawyer. As the *Barham* court stated:

"If this type of action were recognized, an entirely new area of federal litigation would emerge. Any common law tort that deprives a citizen of 'life or liberty' without due process of law, for example, would become actionable in the federal courts as a violation of the fifth amendment.... The Constitution, in its genesis and historical evolution, has been a barrier erected between the individual citizen and collective government for the protection of the rights of individual citizens against potential abuses of power by the government. The rights of citizens in relation to other citizens has been left to the common law or legislative enactment. The Constitution as a source of law was never intended by the framers, nor has it been understood in its evolution, to be a source of substantive law on purely interpersonal relations." 566 F.Supp. at 1499–1500.

■ In a final effort to save this constitutional cause of action, plaintiffs sought leave to amend Count IX to include a claim under 42 U.S.C. § 1985(3), alleging that defendants engaged in a conspiracy to prevent Ms. Dworkin from exercising her civil rights. Although *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 388 (1971), held that § 1985 reaches purely private conspiracies, in *Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court clarified its earlier opinion by stating that *Griffin* should only be read in the context of the Thirteenth Amendment. The Court stated that a claim of conspiracy to interfere with rights protected under the Fourteenth Amendment still requires some kind of state action or involvement. In addressing the First Amendment in particular, the *Carpenters* court held as follows:

(W)e conclude that an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985 unless it is proved that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state. *Id.* at 830, 103 S.Ct. at 3357.

This Court concludes that the *Carpenters* opinion and such cases as *Brown v. Reardon,* 770 F.2d 896 (10th Cir.1985), and *Murphy v. Mount Carmel High School,* 543 F.2d 1189 (7th Cir.1976), make it clear that plaintiffs cannot state a claim under 42 U.S.C. § 1985(3) because they have no evidence of state involvement. Without such evidence, plaintiffs' counts alleging interference with their constitutional rights by such private parties as Larry Flynt and *Hustler* fail to state valid claims. As such, Count IX must be dismissed, and the motion to amend to add a § 1985 claim is denied.

■ Count XIII states virtually the same claim as Count IX except that the person identified in the publications in question, Andrea Dworkin, is not the complaining party. Instead, two members of the Wyoming chapter of the National Organization for Women (NOW) have sued in their own right, claiming that their right to speak out against pornography has been infringed because they are afraid they will be attacked in *Hustler* just as they claim Ms. Dworkin was attacked. Since Ms. Dworkin herself cannot maintain her claim for direct interference with her own First Amendment rights, the Court must also dismiss these indirect claims.

■ Count XIII has a further flaw. In a prayer for injunctive relief, the Wyoming NOW plaintiffs ask the Court to enjoin *Hustler* from using the name or likeness of any of Wyoming NOW's members, "or any other woman in any article which is false, known to be false, or, if true, not published with good intent and for justifiable ends." Clearly such massive injunctive relief would violate the First Amendment constraints on prior restraint set out so convincingly as long ago as 1931 in *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Moreover, the Court is skeptical regarding plaintiffs' standing to raise this issue for all women. NOW certainly represents the viewpoint of many women and men in this country, but the Wyoming chapter is a small one which can-

not even certify that it speaks for the national NOW association on this issue. The question of whether or not pornography is harmful, and the larger issue of even if it is, are First Amendment protections still more important, is a controversial issue of debate among feminists on which there is no consensus. *See e.g.* Varda Burstyn, ed., *Women Against Censorship* (1985); Mary Kay Blakely, *Is One Woman's Sexuality Another Woman's Pornography?*, Ms. Magazine, April 1985; Jean Bethke Elshtain, *The New Porn Wars*, The New Republic, June 25, 1984; and Andrea Dworkin, *Pornography: Men Possessing Women* (1981).

The Court also notes that the claims by the Wyoming NOW plaintiffs that *Hustler* should be enjoined from using women in any material unless with good intent and for justifiable ends, and also the implication that any woman should be able to sue based on pornographic material containing another woman's name or likeness, are similar to the types of claims which would have been allowed under the now famous Indianapolis anti-pornography statute. That statute, based on an earlier Minneapolis version co-authored by Ms. Dworkin, was declared unconstitutional in a well-reasoned and convincing opinion by Judge Barker in *American Booksellers Ass'n, Inc. v. Hudnut*, 598 F.Supp. 1316 (S.D.Ind. 1984); *aff'd* 771 F.2d 323 (7th Cir.1985); *aff'd per curiam*, —— U.S. ——, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986).

As in the *Hudnut* case, to allow women not even mentioned in the pornographic materials to sue for damages based on the mere fact that the pornography was published and offended them, would unduly impinge on the First Amendment free speech rights of both the publishers and their readers. Unless the material in question is obscene, and therefore not protected speech, pornographers have the same First Amendment rights as anyone else. This Court agrees with the Northern District of Texas that *Hustler* "is tasteless, it is offensive, and it is filled with unmitigated raunch. Nevertheless, Hustler is protected by the First Amendment because it is not 'obscenity.'" *Faloona v. Hustler Magazine, Inc.*, 607 F.Supp. 1341, 1360 (N.D. Tex.1985). As this Court stated in an earlier opinion regarding this case:

Many publications are offensive to one group or another, but that does not mean that these groups should have the power to stop others from purchasing otherwise protected materials. The near absolute freedom of speech and of the press guaranteed by the First Amendment has its costs. All citizens must live with the realization that every other citizen has protected rights. *Dworkin v. Hustler Magazine, Inc.*, 611 F.Supp. 781, 787 (D.Wyo.1985).

In dismissing the claims of the Wyoming NOW plaintiffs based on failure to state a valid claim, the Court would note as a final comment on this issue that the First Amendment works both ways. While feminists cannot sue pornographers because they find the materials offensive and harmful to women, neither can other members of society who find feminist literature offensive and potentially harmful to their way of life, sue feminists for publishing their views. In a society with such diverse opinions and life-styles as flourish in these United States, the protection of free speech guaranteed by the First Amendment is perhaps the most important component of the free society envisioned by our founders as set forth in the United States Constitution.

For all of the foregoing reasons, it is therefore

ORDERED that defendants' motions to dismiss and for judgment on the pleadings be, and the same hereby are, granted, and that Counts IX, XI, XII, XIII, and XIV, defendants Inland Empire Periodicals and Park Place Market, and plaintiffs Priscilla Moree and Judith Fouts, are all dismissed from this case, with prejudice. It is further

ORDERED that plaintiffs' motions to amend and defendants' motion to transfer this matter to California be, and the same hereby are, denied as untimely.