Andrea DWORKIN, a citizen of New York; Priscilla Moree, a Wyoming citizen, individually and in her representative capacity of the Jackson, Wyoming Chapter of the National Organization for Women; and Judith Fouts, a Wyoming citizen, individually and in her representative capacity of the Wyoming Chapter of the National Organization for Women, Plaintiffs,

v.

HUSTLER MAGAZINE, INC., a California corporation; Larry Flynt, a citizen of California, Inland Empire Periodicals, an Oregon corporation; and Park Place Market, a Wyoming corporation, Defendants.

No. C85–0111–B.

United States District Court, D. Wyoming.

June 18, 1985.

G.L. Spence, Gary L. Shockey, Spence, Moriarity & Schuster, Jackson, Wyo., for plaintiffs.

John A. Sundahl, Julie Nye Tiedeken, Godfrey & Sundahl, Cheyenne, Wyo., Alan L. Isaacman, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for defendants.

## ORDER DENYING MOTION TO REMAND

BRIMMER, District Judge.

The above-entitled matter came before the Court pursuant to plaintiffs' motion to remand. The Court, having reviewed the pleadings, the briefs, and the evidence of-

fered, and being fully advised in the premises, FINDS and ORDERS as follows:

Plaintiffs originally filed this matter in state court, specifically the Ninth Judicial District, Teton County, Wyoming, and defendants removed it to this Court based on federal question and diversity jurisdiction. Plaintiffs contend that the case was improperly removed, and now ask the Court to remand the case to the state court.

Broken down to its essence, this case involves a suit filed by Andrea Dworkin against Larry Flynt and *Hustler* magazine alleging libel and defamation. Ms. Dworkin is a New York resident, Mr. Flynt resides in California, and *Hustler* is a California corporation. However, two Wyoming members of the National Organization for Women, Priscilla Moree and Judith Fouts, as plaintiffs, have also sued, based on the same allegedly libelous material, for interference with their rights as guaranteed under the Wyoming Constitution, and Inland Empire Periodicals, an Oregon corporation, and Park Place Market, Inc., a Wyoming corporation, were joined as defendants for distributing *Hustler*. In her Ninth Cause of Action, Ms. Dworkin sued Mr. Flynt and *Hustler* for invasion of her constitutional rights under the First and Fourteenth Amendments to the United States Constitution.

The Court is cognizant of the plaintiffs' choice of the State Court as their forum. If there were any possible way that this Court could respect that choice and remand this case, it would do so. This Court has no need or desire to try another case, such as this one. While it is settled law that the plaintiffs are the masters of their claims, they did not have to state a federal claim if they did not want to. They also cannot use "artful pleading" to avoid removal jurisdiction. C. Wright, *Law of the Federal Courts,* 4th Ed., p. 215.

As their first ground for removal, defendants contend that Ms. Dworkin's Ninth Cause of Action constitutes a federal question, thus giving the Court jurisdiction over all plaintiffs' claims pursuant to 28 U.S.C. § 1441(b) and (c). Ms. Dworkin's Ninth Cause of Action reads in part as follows:

*Andrea Dworkin's Ninth Cause of Action against Defendants Hustler and Larry Flynt*

(Invasion of Constitutional Rights)

3. As a citizen of the United States, Andrea Dworkin is guaranteed equal protection of the laws and judicial decisions in this country. She is entitled to protection under the United States Constitution and its amendments on an equal footing with any other citizen or with any other entity, including corporations such as *Hustler Magazine, Inc.*

4. Specifically, Andrea Dworkin is entitled to the protection of the First Amendment of the United States Constitution to exercise her freedom of speech. Moreover, under the same Constitutional Amendment, she is entitled to protection of the laws to allow her to assemble and to petition the government for redress of grievances.

5. Andrea Dworkin has chosen to exercise her rights of free speech, assembly, and governmental petition through her writings and through her activities to bring about passage of laws which define pornography as a violation of the civil rights of women.

6. The defendant *Hustler Magazine, Inc.* has, through its publication of the materials in Exhibits A, B and C attached hereto, mounted an intentional, recurring, malicious attack on Andrea Dworkin designed to intimidate Andrea Dworkin into abandoning her rights of free speech, rights to assemble, and rights to petition the government for political change and to chill the exercise of said rights and to still Andrea Dworkin.

7. The First Amendment to the Constitution was never intended to be, nor has it ever been interpreted as, an affirmative weapon against the citizens of the United States. It has formed a shield for pornographers, such as *Hustler,* to hide behind, but has never been

intended as a sword for pornographers to use on citizens such as Andrea Dworkin.

8. The continued malicious attacks on the character of Andrea Dworkin by *Hustler* under the guise of freedom of speech have amounted to an affirmative campaign on the part of *Hustler* magazine to thwart the political and social activities of Andrea Dworkin, as well as to silence her exercise of her right to free speech.

■ A case arises under the Constitution of the United States "if it clearly and substantially involves a dispute or controversy respecting the validity, construction or effect of ... [the Constitution] ... which is determinative of the resulting judgment." *Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375, 1381 (10th Cir.1978), *cert. denied* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979). Under the plain language of Ms. Dworkin's Ninth Cause of Action, whichever court this case is before will have to decide whether Ms. Dworkin is entitled to the First Amendment rights she claims at the expense of what Mr. Flynt claims are his First Amendment rights.

■ The court in *Graf v. Elgin, Joliet and Eastern Ry. Co.,* 697 F.2d 771, 775 (7th Cir.1983) stated, "(a) claim that you have been retaliated against for exercising a federal right [in this case freedom of speech] might raise a federal question substantial enough to confer federal jurisdiction under 28 U.S.C. § 1331." This matter goes one step further. Not only does Ms. Dworkin claim that the defendants retaliated against her for exercising her own constitutional right to speak out against pornography, but also she contends that it is the First Amendment and the courts' interpretations thereof which have allowed the defendants to use claimed rights of free speech to chill the exercise of her rights of free speech. Clearly, construction of the First Amendment will be necessary to resolve this conflict. Since the outcome of this claim will be contingent on the construction of the federal constitution, this matter is a federal question under the *Mountain Fuel* test.

The Court notes that when faced with a somewhat similar case alleging invasion of constitutional rights, the District of Columbia Circuit concluded that the matter involved a federal question. As the court stated, "Counts II and III of the complaint allege violations of Tuck's and his client's constitutional liberties, thus furnishing the court with federal question jurisdiction." *Tuck v. Pan American Health Organization,* 668 F.2d 547 (D.C.Cir.1981). Ms. Dworkin alleges the same type of claim, namely, that defendants have violated her constitutional liberty of free speech. The *Tuck* court also noted that while defendant Pan American Health Organization (PAHO) probably was not a state actor, since the civil rights claim against PAHO was not "obviously frivolous", the claim was not insubstantial for jurisdictional purposes.

■ Plaintiffs' counsel, in one of his many arguments for remand, stated that the Ninth Cause could not be a federal question because as a civil rights claim it was deficient in failing to allege state action. The Court first notes that if a plaintiff could effectuate remand by pointing out the flaws in her own complaint, in effect arguing for dismissal of that claim, the long established rule that jurisdiction is determined in light of the original complaint, not subsequent amendments, could become meaningless. *See Brown v. Eastern States Corp.,* 181 F.2d 26 (4th Cir.), *cert. denied,* 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631 (1950); 1A J. Moore, *Moore's Federal Practice,* 2d Ed. § 0.160(7). Furthermore, the Supreme Court has long held that the fact that a claim might be ripe for a motion to dismiss at a later time does not necessarily affect the question of subject matter jurisdiction. "A claim is insubstantial only if its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Hagans v. Lavine,* 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974) quoting from *Hannis*

*Distilling Co. v. Baltimore*, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910).

■ As far as the Court can ascertain, no circuit court, much less the Supreme Court, has ever ruled on the question of whether there should be a private cause of action for interference with the right to free speech brought about by another party's exercise of what appears to be his equal right to free speech. The Court is not willing to decide, without benefit of briefing by all parties, that Ms. Dworkin cannot state such a claim against defendants. Ms. Dworkin alleges that the only reason defendants are able to engage in such activities is because they hide behind the First Amendment, using it both as a shield and sword against the rights of private, non-media connected citizens. Without commenting on the merits of such a claim, the Court notes that private attempts to "misuse" the law have been previously recognized as government entanglement sufficient enough to constitute state action. *See, e.g., Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Whether or not Ms. Dworkin can actually go forth with such a claim will be a matter for later determination, but as the pleadings now stand, the Court cannot conclude that the Ninth Cause is obviously frivolous and unsound.

The Court must conclude, however, that in order to properly assess plaintiffs' claim, it will be necessary to construe the First Amendment right of free speech and the cases dealing with such rights. This case is distinguished from *Monks v. Hetherington*, 573 F.2d 1164 (10th Cir.1978), in which the First Amendment was invoked essentially as a defense in a declaratory judgment case. Although defendants will certainly rely for a defense on the First Amendment, plaintiff does also. This case is more akin to the *Mountain Fuel* case, *supra*, 586 F.2d 1375, in which plaintiff, in its complaint, discussed federal price control regulations, which the Tenth Circuit held was enough to invoke federal question jurisdiction. Likewise, Ms. Dworkin, on the face of her complaint, asks the Court to determine whether defendants have violated her rights under the United States Constitution. This clearly involves a dispute respecting the construction and effect of the First Amendment. The Court must conclude that the Ninth Cause of Action raises a federal question, based upon which defendants have an absolute right of removal to federal court.

■ Defendants also contend that the Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1441(b) and (c). Although the Court is not totally convinced that plaintiffs Moree and Fouts are properly joined in this action, it is unnecessary to deal with the validity of their claims at this time. The major obstacle to a finding that diversity exists is that defendant Park Place, Inc. is a Wyoming corporation. Defendants argue that Park Place was fraudulently joined in this action, and that diversity really is complete between California, New York, Oregon, and Wyoming residents.

Defendant Park Place is a small convenience store in Jackson, Wyoming. Its only connection with the case is the fact that *Hustler* magazines can be purchased there. Defendants contend that Park Place cannot possibly be found liable because there is no evidence that Park Place had any knowledge that the issues in question contained the allegedly libelous material. The general rule for secondary publishers, as stated in § 581 of the Second Restatement of Torts, is that "one who only delivers or transmits defamatory matter published by a third person is subject to liability if, but only if, he knows or has reason to know of its defamatory character."

Professor Prosser is in complete agreement:

It would appear quite clearly that those who perform a secondary role in disseminating defamatory matter authored and published by others in the form of books, magazines, and the like—as in the case of libraries, news vendors, distributors, and carriers—would not be subject to liability to anyone in the absence of proof

that they knew or had reason to know of the existence of defamatory matter contained in matter published. *Prosser and Keeton on Torts, 5th Ed.*, p. 810.

Furthermore, according to the Restatement, unless there is something unusual which should put him on notice, a distributor is also "under no duty to examine the various publications that he offers for sale to ascertain whether they contain any defamatory items." § 581, comment (d).

■ The affidavit and deposition of Michael Lynch make it clear that plaintiffs have no evidence of such knowledge on the part of Park Place. Mr. Lynch, president, and with his wife as sole owners of the corporation, has sworn that he had no knowledge that the material in question was in the magazines, much less that it might be libelous in nature. Without evidence of such knowledge, no cause of action exists against Park Place. "The joinder of a resident defendant against whom no cause of action is stated is patent sham . . . and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964). The *Dodd* case also holds in deciding whether a defendant is fraudulently joined, which the Court should note is a legal term of art that does not reflect on the integrity of plaintiffs or counsel, the Court can pierce the pleadings and compel plaintiffs to disclose their evidence regarding liability of that party. *Id.*, at 85.

Plaintiffs have failed to provide any evidence that Park Place knew or should have known of the allegedly libelous material in the *Hustler* issues in question. In his deposition Mr. Lynch testified that neither he nor any of his staff had any knowledge of the material in question, and that he had no personal knowledge of *Hustler* having ever printed anything untrue or defamatory. *Lynch* deposition at 62. Plaintiffs' counsel rely on the fact that both comments (d) and (e) of § 581 of the Second Restatement of Torts talk in terms of distributors assuming a risk for disseminating notoriously sensational or scandalous publications, contending that since Mr. Lynch knew that *Hustler* had been sued by Jerry Falwell (although after the publication and sales of the issues in question), and that defendant Flynt has engaged in contemptuous activities in court, Park Place should have been on notice to check every issue of *Hustler* for possible libelous content.

■ In the ordinary layman's understanding of the word, *Hustler* certainly can be considered scandalous. But our courts have held that in the context of the Restatement, scandalous must be read as a term of art meaning defamatory. "In context, those words ["sensational" and "scandalous"] describe authors or publishers who notoriously use *defamatory* material in their publications." *Osmond v. EWAP Inc.*, 153 Cal.App.3d 842, 200 Cal.Rptr. 746 (1984). Scandalous has been given that meaning by the courts in order to avoid unwarranted censorship, because if a distributor were to be held accountable for reading all possible scandalous material that he sells to check it for libelous statements, much written material otherwise protected by the First Amendment would simply not be offered for sale to the public. The Supreme Court stated in *Smith v. California*, 361 U.S. 147, 153–54, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1959),

> If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed. The bookseller's limitation in the amount of reading material with which he could familiarize himself . . . thus would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly. The bookseller's self-censorship, compelled by the state, would be a censorship affecting the whole public, hardly less virulent for being privately administered.

To avoid such private censorship, courts have required a specific showing of scienter, knowledge of the defamatory material, before allowing mere distributors to be held liable. The plaintiffs have produced

no evidence of such scienter on the part of Park Place. A realization that *Hustler* was once sued for libel, or that Larry Flynt has engaged in questionable behavior in the past, is not the equivalent of actual knowledge of the allegedly libelous cartoons. Nor is such knowledge sufficient to put Park Place on notice to check each *Hustler* magazine for defamatory material. If that was the proper standard, every distributor of publications, such as the *National Enquirer*, or such respected publications as *Time* and *The New York Times*, which have also had their fair share of libel suits, would have to check each issue, at his peril, for possible libelous statements about people or events of which the average publication distributor might have no basis for judgment. Such a standard is not in our society's best interests; it would foster excessive censorship, and would deprive the public of reading educational and entertainment materials, all in direct contradiction of the right of freedom of the press guaranteed by the First Amendment.

Asking his prospective female employees if they would have reservations about selling *Hustler* does not show such scienter on the part of Mr. Lynch or Park Place. It merely shows knowledge on the part of Mr. Lynch that *Hustler* publishes some material that many women find offensive, not that he had any knowledge regarding possible defamatory material. Many publications are offensive to one group or another, but that does not mean that these groups should have the power to stop others from purchasing otherwise protected publications. The near absolute freedom of speech and of the press guaranteed by the First Amendment has its costs. All citizens must live with the realization that every other citizen also has protected rights. Again, to allow liability of a publication's distributor to be based on the knowledge that some people might find certain publications offensive would dangerously foster massive private censorship of published materials.

In discussing a similar case, the court in *Lewis v. Time, Inc.,* 83 F.R.D. 455, 465 (E.D.Cal.1979), *aff'd* 710 F.2d 549 (9th Cir. 1983), concluded that

(t)he high standards required by the First Amendment combined with the total absence of case law in California [and Wyoming] holding a distributor liable where he has merely disseminated an unchanged article suggests the inherent improbability of proving such liability.

The Court agrees with the *Lewis* court that "the unrestricted distribution of newspapers and magazines ... is at the heart of the First Amendment ... (and that) specific factual allegations concerning actual knowledge or giving rise to a duty to investigate are required in any lawsuit seeking to impose liability on a distributor for libelous material in a periodical over which he has no editorial control." *Id.,* at 465.

■ Counsel urges that a separate standard should be imposed for *Hustler* because of the type of publication it is. While publications like the *National Enquirer* have been found liable for defamation several times, counsel admits they should be exempt from this special standard. Since plaintiff has not presented the Court with a single case, upheld on appeal, holding *Hustler* liable for defamation, the Court can only conclude that there is no good reason to promulgate the requested special standard. Because of the lack of evidence of scienter on the part of Park Place, the Court must find that in deciding the question of diversity it must ignore the presence of Park Place as being "fraudulently joined." *Dodd, supra,* 329 F.2d at 85. Without considering Park Place, diversity is complete, and the case was properly removed under 28 U.S.C. § 1441.

Plaintiffs also argue that there is no diversity because the Moree and Fouts claims do not put $10,000 in controversy. Ms. Moree and Ms. Fouts have sued defendants for interference with their rights based on the same cartoons which allegedly libel Ms. Dworkin. Ms. Dworkin seeks $50 million in actual damages, and $100 million in punitive damages. Since they only ask for damages "in a dollar amount which can and should be determined by the jury",

plaintiffs Moree and Fouts ask the Court to conclude the requisite amount is not in controversy. The Court is unconvinced by this argument. Moree and Fouts are also seeking injunctive relief which easily could involve more than $10,000. In Count XII of their complaint, plaintiffs ask the Court to enjoin *Hustler* magazine

> from using the name or likeness of any member of these associations [local and national NOW chapters] or any other woman in any article which is false, known to be false, or, if true, not published with good intent and for justifiable ends.

■ Assuming for the moment that the Court should consider reassessing the "actual malice" test for libel, and further should consider engaging in such massive prior restraint, it would be impossible not to conclude that the requested relief puts more than $10,000 in controversy. It has long been the rule in the Tenth Circuit that

> (i)n determining the matter in controversy, we may look to the object sought to be accomplished by the plaintiffs' complaint; the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce. *Ronzio v. Denver & R.G.W.R. Co.*, 116 F.2d 604, 606 (10th Cir.1940).

Since *Hustler* magazine's main business revolves around using the names and likenesses of women, such an injunction could have a devastating impact on *Hustler's* multi-million dollar business, and from *Hustler's* point of view, clearly puts more than $10,000 in controversy.

Finally, plaintiffs' counsel argued that the equities of the situation call for remand. This Court sincerely sympathizes with the plight of ordinary women who might wish to sue pornographers in their local court, but that is not a proper consideration upon a motion to remand. Only Ms. Moree resides in Teton County, while Ms. Fouts lives in another Wyoming locality, and Ms. Dworkin resides in New York. In *Sheet Metal Workers Intern. Ass'n, AFL–CIO v. Seay*, 693 F.2d 1000, 1002

(1982), *reh. denied*, 696 F.2d 780 (10th Cir. 1983), the court held that the trial court's remand based on the decision that "the most equitable forum ... would be the state district court where the action was originally filed", was improper, and granted defendant's mandamus petition. The Court of Appeals went on to say that equitable considerations are not grounds for remand because they do not "concern jurisdiction or any legal defect in the removal and instead (are) similar to the ground for remand rejected in *Thermtron [Products Inc. v. Hermansdorfer]*, ... 423 U.S. [336] at 340–41 [96 S.Ct. 584 at 587–88, 46 L.Ed.2d 542 (1976) ]." *Id.* at 1005. If this Court could consider such equities, it would be delighted, nay, overjoyed, to remand this case promptly to the District Court of Teton County; it finds no joy, or pleasure in having to retain jurisdiction of it. But, the Court is certain that if it did the Tenth Circuit Court of Appeals would grant a mandamus petition, just as it did in Judge Seay's case, *supra.*

Thus, this Court must reluctantly conclude that removal was proper, based upon both federal question and diversity jurisdiction, and that plaintiffs' equitable claims must be deemed irrelevant to the question at hand. Therefore, it is

ORDERED that plaintiffs' motion for remand be, and the same hereby is, denied. It is further

ORDERED that an immediate appeal from this order denying remand to the State Court may be taken by the plaintiffs, if they desire to do so, pursuant to the provisions of 28 U.S.C. § 1292(b), to the Court of Appeals of the Tenth Circuit, upon the ground that this order involves controlling questions of law concerning the existence of a federal question and the liability of secondary distributors of published materials on which there may be substantial grounds for a difference of opinion and that an immediate appeal from this order may materially advance the ultimate determination of this action.