**Kerry DRAKE and Kelly Flores, Plaintiffs,**

v.

**CHEYENNE NEWSPAPERS, INC., Defendant.**

No. 93–CV–0339–B.

United States District Court, D. Wyoming.

Feb. 4, 1994.

1404

Rodger McDaniel, Cheyenne, WY, for plaintiffs.

Loyd E. Smith, Cheyenne, WY, L. Michael Zinser, Nashville, TN, for defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DISMISSING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon the Plaintiffs' Motion to Remand and the Defendant's Motion to Dismiss, and the Court having reviewed the materials on file herein both in support of and in opposition to, having heard oral argument, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

The plaintiffs in this suit were both managerial employees of the defendant newspaper. In conjunction with the defendant's efforts in opposing the unionization of the newspaper's editorial department at an upcoming election, the newspaper enlisted the support of all of its managerial employees in advocating against unionization. The defendant demanded that the managerial staff, including the plaintiffs, wear campaign buttons opposing unionization.

Plaintiffs initially agreed to wear the buttons, but then advised the defendant that they would no longer wear them because they did not agree with the defendant's anti-unionization stance. The defendant admonished the plaintiffs that they were required to carry out and support management policy, which included wearing the buttons. The plaintiffs refused to comply, and on October 16, 1993, the defendant suspended them indefinitely without pay. One month later, on November 16, 1993, the plaintiffs were fired.

The next day, they initiated the present lawsuit in Wyoming state district court, alleging that they were wrongfully terminated in violation of public policy, a recognized tort under Wyoming law. *See Allen v. Safeway Stores, Inc.*, 699 P.2d 277, 282–84 (Wyo.1985). They claimed that they were fired for exercising their rights to free speech under both the United States and Wyoming Constitutions.

The defendant subsequently filed a notice of removal in this Court, alleging that the complaint implicated the First Amendment to the United States Constitution and that the case was therefore within this Court's original jurisdiction pursuant to 28 U.S.C. § 1331 (1988), the general federal question statute.[1] In addition, the defendant filed a motion to dismiss the complaint under Rule 12(b)(6). The plaintiffs opposed the motion to dismiss, and also filed a timely motion to remand the case to state court[2] on the grounds that this case was not within this Court's original federal question jurisdiction and therefore was improperly removed.

The case is presently before the Court on the motion to dismiss as well as the motion to remand. For reasons set forth below, the Court concludes that the motion to remand is proper. This conclusion necessarily deprives this Court of subject matter jurisdiction to hear the motion to dismiss, and therefore, that motion must be dismissed.

### Discussion

At the outset, it is important to recognize what the complaint in this case does *not* allege. The plaintiffs have not brought suit, nor could they, as either a § 1983 civil rights suit or as a so-called *"Bivens"* action.[3] This is because of the most fundamental principle of constitutional law, which is that the Constitution only protects against the abridge-

---

1. The parties agree that diversity jurisdiction is unavailable in this case based on the fact that both plaintiffs and the defendant are citizens of this state. Therefore, removal is available, if at all, based on the presence of a federal question.

2. *See* 28 U.S.C. § 1446 (1988).

3. In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized that there was an implied right of action to sue federal officials for a violation of the Fourth Amendment. A *Bivens* action is thus a colloquial way of saying that the suit was brought to redress a federal constitutional violation against a federal defendant.

A suit brought pursuant to § 1983 shares a common attribute with a *Bivens* action, which is that it is brought most often to redress a violation of a federal constitutional right. Section 1983, however, applies when the defendant is a state actor as opposed to a federal actor.

ment of constitutional rights by a governmental entity and has no application when the defendant is a private party. *See, e.g., Hudgens v. NLRB,* 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976) (citing *Columbia Broadcasting System, Inc. v. Democratic Nat'l Comm.,* 412 U.S. 94, 114, 93 S.Ct. 2080, 2092, 36 L.Ed.2d 772 (1973)). The defendant in this case is neither a federal nor a state actor and therefore, cannot be sued for violating the plaintiffs' First Amendment rights of free expression.

As Justice Holmes once noted, "the party who brings suit is master to decide what law he will rely upon[.]" *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Exercising this prerogative, the plaintiffs in this case have brought suit under the common law of the state of Wyoming in regards to a tortious discharge in violation of public policy. The complaint does make reference to the First Amendment of the federal constitution as well as Article I, § 20 of the Wyoming Constitution.[4] Those provisions are referenced in the plaintiffs' complaint as evidence of the public policy in favor of free speech, an element of the plaintiffs' tortious discharge claim under *Allen.* Therefore, the narrow issue presented by the motion to remand is whether the plaintiffs' reference to the First Amendment, as a source of public policy in support of their tort claim, is sufficient to confer federal question jurisdiction in this Court. In order to properly analyze this threshold jurisdictional issue, it will be necessary to review the controlling legal principles regarding both removal and federal question jurisdiction.

### A. Removal Jurisdiction

■ The original jurisdiction of the federal district courts encompasses both diversity and federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1332 (1988). Of course, state

courts have power, in the constitutional sense, *e.g., Howlett v. Rose,* 496 U.S. 356, 367–70, 110 S.Ct. 2430, 2438–40, 110 L.Ed.2d 332 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–78, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981); *Claflin v. Houseman,* 93 U.S. 130, 136–37 (1876), as well as a corresponding duty, *e.g., Testa v. Katt,* 330 U.S. 386, 388–94, 67 S.Ct. 810, 811–815, 91 L.Ed. 967 (1947); *Mondou v. New York, N.H. & H.R. Co.,* 223 U.S. 1, 58, 32 S.Ct. 169, 178, 56 L.Ed. 327 (1912) ("The existence of the jurisdiction creates an implication of a duty to exercise it.") to hear and adjudicate issues of federal law, by virtue of the Supremacy Clause of Article VI of the Constitution. *See* U.S. CONST. art. VI.

■ By statute, however, Congress has provided litigants with the power to remove a civil action brought in state court to federal court, even though the state court is fully competent to decide issues of federal law, so long as the case comes within the original jurisdiction of the federal courts such that it could have been brought in federal court *ab initio. See* 28 U.S.C. § 1441(c) (1988); *see also Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 7–28, 103 S.Ct. 2841, 2845–56, 77 L.Ed.2d 420 (1983) (discussing the procedures for removal of a federal question case). It is apparent, therefore, that removal jurisdiction is entirely a creature of statute. *See, e.g., Shannon v. Shannon,* 965 F.2d 542, 545 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 677, 121 L.Ed.2d 599 (1993); *Hurt v. Dow Chemical Co.,* 963 F.2d 1142, 1145 (8th Cir.1992); *Somlyo v. J. Lu–Rob Enters., Inc.,* 932 F.2d 1043, 1045 (2d Cir.1991) (citing *Little York Gold–Washing & Water Co. v. Keyes,* 96 U.S. 199, 201, 24 L.Ed. 656 (1877)); *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988), *aff'd on other grounds,* 503 U.S. ——, 112

---

4. Article I, § 20 states, in relevant part:
   Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right....
   In *Tate v. Akers,* 409 F.Supp. 978 (D.Wyo.1976) (Brimmer, J.), *aff'd,* 565 F.2d 1166 (10th Cir. 1977), this Court held that Article I, § 20 of the Wyoming Constitution was broader than the First Amendment to the United States Constitution. *Id.* at 981–82. This interpretation is also

consistent with the fact the plain language of this provision confers an affirmative right to "speak, write and publish" upon the citizens of this state, whereas the First Amendment, read literally, does not actually confer an affirmative right but rather protects against governmental infringement of that right. *See* U.S. CONST. amend. I ("Congress shall make no law ... *abridging* the freedom of speech[.]") (emphasis added).

S.Ct. 1076, 117 L.Ed.2d 280 (1992). Moreover, because the removal of cases from state court to federal court infringes on the sovereignty of the state courts, thereby implicating significant federalism concerns, *see, e.g., Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 815–17, 106 S.Ct. 3229, 3236–37, 92 L.Ed.2d 650 (1986); *Somlyo,* 932 F.2d at 1045–46; *Willy,* 855 F.2d at 1164; *Phillips v. Intercantieri, S.p.A.,* 672 F.Supp. 1109, 1110 (N.D.Ill.1987), the Supreme Court has held that the lower federal courts must strictly construe their removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) (noting that by enacting the removal statutes, Congress intended to "restrict the jurisdiction of the federal courts on removal" and therefore, the removal statutes are subject to "strict construction"); *see also Willy,* 855 F.2d at 1164; *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988).

■ Consistent with this policy of strictly construing removal jurisdiction, federal courts have held that the party attempting to remove the case to federal court bears the burden of affirmatively establishing that subject matter jurisdiction exists. *See, e.g., Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97–98, 42 S.Ct. 35, 37–38, 66 L.Ed. 144 (1921); *Willy,* 855 F.2d at 1164; *Emrich,* 846 F.2d at 1195; *cf. Smith v. McCullough,* 270 U.S. 456, 459, 46 S.Ct. 338, 339, 70 L.Ed. 682 (1926) (noting that in general, the party seeking to invoke the jurisdiction of a federal court bears the burden of establishing that there is subject matter jurisdiction). Stated another way, there is a rebuttable presumption against subject matter jurisdiction. In *Turner v. Bank of North America,* 4 U.S. (4 Dall.) 6, 1 L.Ed. 718 (1799), the Supreme Court expounded on this notion, stating:

the fair presumption is (not as with regard to a court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction, until the contrary appears.

*Id.* at 10. One final reason why removal jurisdiction must be narrowly construed is because it permits the defendant to preempt the plaintiff's choice of forum. *See Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993) (citation omitted).

Having set forth the basic principles that govern the removal of an action to federal court, this Court must now determine whether the case at bar falls within the original jurisdiction of this Court, a federal district court. If it does not, then the case has been improperly removed and must be remanded back to state court for a lack of jurisdiction.

### B. Federal Question Jurisdiction

#### 1. Limited Jurisdiction

It is a fundamental principle that the federal courts are courts of limited jurisdiction. *See Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982); *Turner,* 4 U.S. (4 Dall.) at 10. Article III, § 1 of the United States Constitution vests the "judicial Power of the United States ... in one supreme Court, and in such inferior Courts as Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1. It is clear that Article III only requires the creation of a Supreme Court. It is equally clear, however, that the entire spectrum of the "judicial Power" conferred by Article III, § 1 has never been vested in the Supreme Court.[5]

Congress has obviously chosen to exercise the constitutional power entrusted to it by Article III and create other lower federal courts. The question that remains is how

---

**5.** Article III, § 2 delineates the original and appellate jurisdiction of the Supreme Court, with the latter form of jurisdiction being subject to "such Exceptions ... as Congress shall make."

In *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868), the Supreme Court, interpreting the "exceptions clause," held that the grant of appellate jurisdiction to it in the First Judicia-

ry Act of 1789 impliedly negated the existence of "all such jurisdiction not affirmed[.]" In other words, the statute conferring appellate jurisdiction was interpreted as excepting from the Supreme Court's appellate jurisdiction everything but what was actually conferred by statute. As a result, the exceptions clause came to be a source of power for Congress to *grant* jurisdiction rather than "except" it.

much of the "judicial Power" that is not vested in the Supreme Court, but that exists by virtue of Article III, § 1, has actually been vested in these inferior courts by Congress.

■ In that regard, it must be noted that the jurisdiction of the lower federal courts is not self-executing, but rather depends on an affirmative grant of jurisdiction from Congress. *See Merrell Dow,* 478 U.S. at 807, 106 S.Ct. at 3231–32; *The Mayor v. Cooper,* 73 U.S. (6 Wall.) 247, 252, 18 L.Ed. 851 (1867) (noting that in order to establish federal jurisdiction, "[t]he Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it. Their concurrence is necessary to vest it."); *United States v. Hudson & Goodwin,* 11 U.S. (7 Cranch) 21, 22, 3 L.Ed. 259 (1812) (stating that the lower federal courts "possess no jurisdiction but what is given them by the power that creates them"). In the seminal decision in *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850), Justice Grier stated this proposition as follows:

> [i]t must be admitted, that if the Constitution had ordained and established the inferior courts, and distributed to them their respective powers, they could not be restricted or divested by Congress. But as it has made no such distinction, one of two consequences must result—either that each inferior court created by Congress must exercise all the judicial powers not given to the Supreme Court, *or that Congress, having the power to establish the courts, must define their respective jurisdictions. The first of these inferences has never been asserted, and could not be defended with any show of reason, and if not, the latter would seem to follow as a necessary consequence.* And it would seem to follow, also, that, having a right to prescribe, Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies. *Courts created by statute can have no jurisdiction but such as the statute confers....*

*Id.* at 448 (emphases added); *see also Webster v. Doe,* 486 U.S. 592, 611–21, 108 S.Ct. 2047, 2057–63, 100 L.Ed.2d 632 (1988) (Scalia, J., dissenting) (discussing *Sheldon* ). It has

been well-settled law since *Sheldon* that because the Constitution vests Congress with the "greater" power—the power to create inferior courts—then Congress necessarily has the "lesser" power to confer only part of the remaining "judicial Power" granted to the judicial branch by Article III, § 1 in those inferior courts. *See Hudson & Goodwin,* 11 U.S. (7 Cranch) at 22 ("for the power which congress possess[es] to create courts of inferior jurisdiction, necessarily implies the power to limit the jurisdiction of those courts to particular objects").

In order to understand how much power of the "judicial Power" has not been vested in the Supreme Court, and thus remains to be conferred in the lower courts, which in turn will permit an understanding of how much power Congress could actually confer in the federal judiciary, we must focus on Article III, § 2 of the Constitution, which delineates the nature and the extent of the judicial power granted in Article III, § 1.

### 2. The "Arising Under" Clause of Article III

■ Article III, § 2 of the Constitution declares that the "judicial Power" enumerated in Article III, § 1 shall extend to, *inter alia,* "all Cases, in Law and Equity, arising under this Constitution."

In *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), Chief Justice Marshall was called upon to interpret the breadth of the "arising under" phrase of Article III, § 2 of the Constitution. He concluded that "when a question to which the judicial power of the union is extended by the constitution, forms an *ingredient* of the original cause, *it is in the power of congress to give the circuit courts jurisdiction of that cause* [.]" *Id.* at 821 (emphases added). Marshall noted that the fact that the Constitution vests appellate jurisdiction in the Supreme Court "does not insinuate, that in any such case, the power cannot be exercised in its original form, by courts of original jurisdiction." *Id.* He thus reaffirmed the principle that the entire judicial power of Article III, § 1 had not been conferred and that Congress was free to confer some, or all, of that dormant power, as it saw fit to do so, in the lower federal courts. Marshall's broad interpretation of the "arising under" clause of Article III, § 2 of the Constitution gave

the federal courts what was potentially [6] an extremely large amount of power because of the breadth of *Osborn*'s "ingredient" test.

When Congress enacted the federal question statute, however, presently codified as § 1331,[7] the language that it used to confer jurisdiction paralleled the language of the Constitution by the use of the phrase "arising under." *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States.") (emphasis added).

Thus, the issue posed falls into the following syllogism: (1) if Article III, § 2 of the Constitution would permit the lower federal courts to invoke the federal judicial power in any cause of action involving a federal ingredient under *Osborn;* and (2) if Congress is vested with the authority to decide how much of the remaining "judicial Power" should be vested in the lower courts under *Sheldon;* then (3) did Congress' use of the phrase "arising under" in § 1331 represent its intent to confer federal question jurisdiction in the lower federal courts to the fullest extent permitted by the Constitution? [8]

The Supreme Court has answered that question in the negative, holding that:

> [a]lthough the language of § 1331 parallels that of the 'Arising Under' Clause of Art. III, this Court has never held that statuto-

ry 'arising under' jurisdiction is identical to Art. III 'arising under' jurisdiction. Quite the contrary is true.... *Art. III 'arising under' jurisdiction is broader than federal-question jurisdiction under § 1331.*

*Verlinden,* 461 U.S. at 494–95, 103 S.Ct. at 1971–72 (emphasis added); *see also Merrell Dow,* 478 U.S. at 807–08, 106 S.Ct. at 3231–32 ("we have long construed the statutory grant of federal-question jurisdiction as conferring a more limited power [than what is permissible under Article III].").  Given that the statutory grant of "arising under" jurisdiction embodied in § 1331 is less than the scope of the "arising under" clause of Article III, the issue becomes one of determining the extent of § 1331 jurisdiction.[9]

### 3. The "Arising Under" Clause of § 1331

■ The Supreme Court has consistently declined the opportunity to announce a single, precise definition of the "arising under" language in § 1331. In *Franchise Tax Board,* the Supreme Court reiterated the notion that "the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Franchise Tax Board,* 463 U.S. at 8, 103 S.Ct. at 2846.  While it is clear that the definition of the statutory "arising under" clause may be uncertain in some cases, the Supreme Court has repeatedly held that the

---

**6.** The word "potentially" is used because, as noted above, jurisdiction is a creature of statute and must actually be conferred on the lower courts by Congress.  Thus, while the "arising under" clause of Article III, § 2 was interpreted broadly, the question still remains as to how much of that power would be conferred by Congress in the lower courts as a grant of jurisdiction.  In other words,

> the effect of [Article III, §§ 1 and 2] is not to vest jurisdiction in the inferior courts over the designated cases and controversies but to delimit those in respect of which Congress *may* confer jurisdiction upon such courts as it creates.

*Kline,* 260 U.S. at 234, 43 S.Ct. at 82–83 (emphasis added).

**7.** The first general federal question statute was contained in the Judiciary Act of 1875. *See* Act of March 3, 1875, § 1, 18 Stat. 470.  The drafters of the modifications to the language of the original statute, now § 1331, did not intend to change the meaning or content of the Act of 1875. *See Romero v. International Term. Co.,* 358 U.S. 354,

359 n. 5, 79 S.Ct. 468, 473 n. 5, 3 L.Ed.2d 368 (1959).

**8.** It is an undisputed proposition that "Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution." *See Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 491, 103 S.Ct. 1962, 1970, 76 L.Ed.2d 81 (1983); *see also Kline v. Burke Construction Co.,* 260 U.S. 226, 234, 43 S.Ct. 79, 82–83, 67 L.Ed. 226 (1922); *Cooper,* 73 U.S. (6 Wall.) at 252 (noting that Congress "may fall short" of conferring the full extent of constitutional jurisdiction, but that Congress "cannot exceed it."); *Hodgson & Thompson v. Bowerbank,* 9 U.S. (5 Cranch) 303, 303, 3 L.Ed. 108 (1809) ("the statute cannot extend the jurisdiction beyond the limits of the constitution.").

**9.** Of course, any "judicial Power" of Article III, § 1 that is not actually conferred by Congress by statute, but that *could be* conferred consistent with Article III's "arising under" clause simply "lies dormant." *Cooper,* 73 U.S. (6 Wall.) at 252.

vast majority of cases that come within this grant of jurisdiction are covered by Justice Holmes' classic statement in *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) that a "suit arises under the law that creates the cause of action." [10]

It is well-established that the question of whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392–93, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987); *Franchise Tax Board*, 463 U.S. at 9–10, 103 S.Ct. at 2845–47; *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936) (Cardozo, J.); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152–54, 29 S.Ct. 42, 43–44, 53 L.Ed. 126 (1908). The well-pleaded complaint rule, which looks only at the four corners of the complaint itself to assess whether federal jurisdiction exists, is equally applicable when the court's jurisdiction is predicated on a cause of action that was removed to federal court. *See Merrell Dow*, 478 U.S. at 808, 106 S.Ct. at 3232; *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914). In such a case, removal would be proper only if the well-pleaded complaint, among non-diverse parties, asserts a claim that "arises under" federal law. *See American Nat'l Red Cross v. S.G.*, 505 U.S. ——, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992); *see also Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1017 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993); *Tingey v. Pixley–Richards West, Inc.*, 953 F.2d 1124, 1129–30 (9th Cir.1992).

The Supreme Court has recognized, however, that a case may "arise under" federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Board*, 463 U.S. at 9, 103 S.Ct. at 2846 (citing *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921);

*Hopkins v. Walker*, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917)). In this regard, the *Merrell Dow* decision is particularly instructive and relevant to the disposition of the issue presented in this case.

During the preceding decades, Merrell Dow Pharmaceuticals manufactured and distributed the drug Bendectin, which was often taken by pregnant women during the course of their pregnancies. Litigation subsequently ensued in numerous jurisdictions by mothers who alleged that the Bendectin resulted in birth defects to their children. In this particular litigation, the plaintiffs filed suit in Ohio state court, alleging common law claims of negligence, breach of warranty, strict liability, fraud and gross negligence. A portion of their negligence claim alleged that the drug Bendectin was "misbranded" in violation of the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., because the labeling allegedly did not provide adequate warning that the drug was potentially dangerous.[11]

Merrell Dow then filed a timely notice of removal of the action to federal court, alleging that the plaintiffs' action was founded in part on a federal claim under the FDCA. The district court found that there was federal question jurisdiction, but the Sixth Circuit reversed, finding that the causes of action alleged in the complaint did not "arise under" federal law. *See Thompson v. Merrell Dow Pharmaceuticals, Inc.*, 766 F.2d 1005 (6th Cir.1985). After concluding that the FDCA did not, either expressly or impliedly, create a private right of action, the court reasoned that federal jurisdiction would only exist if the plaintiffs' right to relief necessarily depended on a substantial question or interpretation of federal law. The appeals court concluded that the reference to the FDCA was only relevant as one criterion with respect to the negligence claim, and that because the jury could find negligence without finding a violation of the FDCA, the plaintiffs' causes of action did not "arise under" federal law. *Id.* at 1006.

10. "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow*, 478 U.S. at 808, 106 S.Ct. at 3232.

11. The theory was that the alleged misbranding was relevant to the issue of causation.

In affirming the Court of Appeals, the Supreme Court made several points which are relevant to the case at bar. First, it was clear in *Merrell Dow* that the plaintiffs' claims did not "arise under" federal law in the sense that federal law did not create any of the causes of action asserted by the plaintiffs. Thus, the case presented what Justice Frankfurter called the "litigation-provoking problem," *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 470, 77 S.Ct. 923, 928, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting), which is determining whether federal question jurisdiction exists based on the presence of a federal issue in a state law cause of action.[12] *Id.; see also Merrell Dow,* 478 U.S. at 809–10, 106 S.Ct. at 3232–33. The Court went on to conclude that the presence of a claimed violation of the FDCA was insufficiently "substantial" to confer federal question jurisdiction even though proof of misbranding was an element of the plaintiffs' cause of action. *Id.* at 812–14, 106 S.Ct. at 3234–35.

### 4. Application in this Case

▮ The defendant correctly concedes that this Court does not have jurisdiction over this case on the grounds that the First Amendment creates the plaintiffs' cause of action. As noted above, the First Amendment is implicated, if at all, only as a source of public policy in favor of the right to free speech. Jurisdiction exists, therefore, only if there is a substantial federal issue present in the plaintiffs' state law cause of action, the so-called litigation provoking problem raised by Justice Frankfurter. This was the precise issue that was raised in *Merrell Dow,* where a majority of the Supreme Court was unable to conclude that federal question jurisdiction extended to a state law claim which had a federal law issue as an element of that claim.

### a. The Significance of Merrell Dow

The defendant in this case is faced with as difficult of a set of circumstances as was the defendant in *Merrell Dow.* In both this case and *Merrell Dow,* the parties conceded that jurisdiction could not be maintained under Justice Holmes' formulation of statutory "arising under" jurisdiction. In both cases, the federal element which allegedly conferred subject matter jurisdiction was claimed as an element of a state law cause of action; in *Merrell Dow,* the FDCA violation was relevant to the proximate cause issue of the negligence claim whereas the First Amendment in this case is allegedly relevant to the tortious discharge claim.[13] Thus, it appears that a proper application of the analysis and reasoning used in *Merrell Dow* compels the conclusion that the import of the First Amendment in this case is simply too insubstantial to establish federal subject matter jurisdiction.

---

12. As Justice Frankfurter noted, the problem is really one of identifying "the degree to which federal law must be in the forefront of the case and not collateral, peripheral or remote[.]" *Textile Workers,* 353 U.S. at 470, 77 S.Ct. at 928 (Frankfurter, J., dissenting).

13. The Court acknowledges that the Supreme Court's decision in *Smith* is arguably more apposite than *Merrell Dow* because *Smith* involved the issue of whether a cause of action arose when the Constitution was the alleged source of the federal element, which is the case here, whereas *Merrell Dow* involved a federal statute. While a literal reading of § 1331 seems to undercut the argument that there is, or should be, any difference between situations where the alleged federal element of the cause of action is the Constitu-

tion and situations where a federal statute is the element, the dissenting opinion in *Merrell Dow* makes it clear that *Smith* is still good law. *See Merrell Dow,* 478 U.S. at 819–20, 106 S.Ct. at 3237–38 (Brennan, J., dissenting).

Nonetheless, even if *Smith* was applied in this case, the result would still be the same. This is because under *Smith,* federal question jurisdiction would exist only if the "right to relief *depends upon the construction of application of the Constitution* ..." *Smith,* 255 U.S. at 199, 41 S.Ct. at 245 (emphasis added); *see also Gully,* 299 U.S. at 112, 57 S.Ct. at 97 (noting that the Constitution must be "an element, and an essential one, of the plaintiff's cause of action."). For reasons discussed below, this Court does not believe that the plaintiffs' right to relief in this

Furthermore, this conclusion is reinforced by the fact that a careful examination of the particular facts of this case demonstrates that this case presents a less compelling set of circumstances than did *Merrell Dow*. The reason that the facts here are less compelling is because in this case, the First Amendment is not even an essential element of the plaintiffs' claim, whereas the FDCA violation was at least relevant to that cause of action. Counsel for the plaintiffs acknowledged that the First Amendment is not necessary to the disposition of this case, representing that the Court could completely ignore any reference to the First Amendment without affecting the plaintiffs' chance of recovery because the plaintiffs could rely on the Wyoming Constitution, rather than the First Amendment to the United States Constitution, as their source of public policy. Under these circumstances, the Court is of the opinion that it would expand the concept of "arising under" jurisdiction embodied in § 1331 too far to conclude that the reference to the First Amendment in the complaint can support the exercise of federal jurisdiction in this case. Under any formulation of § 1331 "arising under" jurisdiction, the defendant has failed to meet its burden of establishing affirmatively that jurisdiction exists.[14]

b. *The* Dworkin *Decision*

The defendant makes one final argument in support of its position that the Court does have jurisdiction. It argues that the First Amendment is necessarily implicated in this case based on this Court's earlier decision in *Dworkin v. Hustler Magazine, Inc.*, 611 F.Supp. 781 (D.Wyo.1985). The defendant's reliance on *Dworkin* is, however, misplaced.

*Dworkin* was a defamation suit brought by Andrea Dworkin against Hustler Magazine. Ms. Dworkin initially brought suit in Wyoming state court, but the defendant removed the action to this Court, alleging that the First Amendment was a federal question which established jurisdiction. In concluding that the First Amendment did in fact provide

a basis for the exercise of federal question jurisdiction under § 1331, this Court expressly stated that "in order to properly assess plaintiffs' claims, it will be *necessary* to construe the First Amendment right of free speech and the cases dealing with such rights." *Id.* at 785 (emphasis added). The Court concluded that under the Tenth Circuit's formulation of "arising under" jurisdiction, set forth in *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375 (10th Cir.1978), *cert. denied*, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979), the case was properly within the Court's federal question jurisdiction. *Mountain Fuel* states that "if [the claim] *clearly and substantially* involves a dispute or controversy respecting the validity, construction or effect of ... [the Constitution] ... *which is determinative of the resulting judgment* [,]" then the case "arises under" § 1331. *Id.* at 1381 (emphases added).

In the case at bar, this Court cannot say that the First Amendment right to free speech is "clearly and substantially" implicated, nor can it find that the First Amendment will be determinative of the judgment. *Dworkin* was a defamation suit, which is a *sui generis* body of law. Ever since the seminal decision in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court has declared that under certain circumstances, important and substantial First Amendment values will be implicated in a state law defamation suit. *Id.* at 266–92, 84 S.Ct. at 718–33; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 333, 94 S.Ct. 2997, 3003–04, 41 L.Ed.2d 789 (1974) (noting the problems inherent in trying to "reconcil[e] the law of defamation with the First Amendment."); *see also Fitts v. Kolb*, 779 F.Supp. 1502, 1514 (D.S.C.1991) (stating that *Sullivan* "added a constitutional dimension to the law of libel"). The appropriate circumstances referred to above involve a variety of different factual scenarios, including the alleged defamation of a public official, *see Sullivan*, 376 U.S. at 256, 84 S.Ct. at 713, the alleged defamation of a public figure, *see Curtis Publishing Co. v. Butts*, 388 U.S. 130, 162, 87 S.Ct. 1975, 1995, 18 L.Ed.2d 1094

case can be said to "depend upon" construction of the Constitution.

14. This Court need not, and therefore does not, intimate any view as to whether the present case would fall within the *constitutional* "arising un-

der" clause, as interpreted in *Osborn* as involving a federal "ingredient." The Court's conclusion that this case falls outside the scope of the statutory grant of jurisdiction is sufficient to resolve the matter.

1413

(1967) (plurality opinion),[15] or even the alleged defamation of a private individual with respect to a matter of public concern, *see Gertz*, 418 U.S. at 347–48, 94 S.Ct. at 3010–11. While this list does not purport to be an exhaustive one, the Court believes that this discussion amply demonstrates how the law of defamation significantly implicates the First Amendment. More importantly, it is clear that this fact was underlying the result in *Dworkin*. Finally, it should be noted that Ms. Dworkin also alleged a separate claim for retaliation against her with respect to the exercise of her First Amendment rights and that the Hustler's alleged retaliation was intended to chill Ms. Dworkin's exercise of her First Amendment rights. She further alleged that the defendant's publication of the allegedly defamatory matter was an exercise of the defendant's First Amendment rights. Under these circumstances, the Court concluded that the First Amendment would necessarily be implicated in order to resolve the merits of the case.

The preceding discussion illustrates why *Dworkin* is readily distinguishable from the case at bar, and therefore, does not alter this Court's conclusion that the case must be remanded for want of jurisdiction. *Dworkin* and its application of the *Mountain Fuel* test is easily reconcilable with this case. In *Dworkin*, the First Amendment was necessarily implicated, whereas in the present case, the First Amendment is not necessary to the outcome. In Justice Frankfurter's terminology, the federal law issue in the case at bar is simply too collateral, peripheral and remote to the state law cause of action for tortious discharge in violation of public policy such that this Court may not assert subject matter jurisdiction in this case.[16]

**THEREFORE**, it is

**ORDERED** that the Plaintiffs' Motion to Remand be, and the same hereby is, **GRANTED.** It is further

**ORDERED** that the Defendant's Motion to Dismiss be, and the same hereby is, **DISMISSED FOR LACK OF JURISDICTION.** It is further

**ORDERED** that the clerk of court shall send the court's file to the District Court for the First Judicial District of the State of Wyoming for further proceedings before that tribunal.

---

**15.** *Butts* was decided along with the companion case of *Associated Press v. Walker*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

**16.** Given the Court's disposition that there is no subject matter jurisdiction over this cause of action, thereby necessitating a remand, the Court lacks jurisdiction to hear the motion to dismiss and therefore issues no opinion on the merits of that motion.